## SINCLAIR OIL & GAS CO. v. STATE INDUSTRIAL COM. et al.

No. 22861. Opinion Filed Feb. 16, 1932.

Edward H. Chandler, Summers Hardy, and C. L. Canfield, for petitioners.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondents.

RILEY, J. Petitioner, Sinclair Oil & Gas Company, carrier of its own insurance, commenced this proceeding to review an award of the State Industrial Commission in favor of Arthur Olinger, herein referred to as claimant.

On October 30, 1925, claimant, an employee of petitioner, sustained an accidental injury coming within the provisions of the Workmen's Compensation Law. The first report of attending physician, employer's first report of the injury and employer's report of initial payment of compensation, described the nature and extent of the injury, in substance: Skin and flesh torn above the right eye extending down along side of nose, injury to frontal and maxillary bones, and destruction of the right eye.

On April 1, 1926, claimant filed with the Commission a petition for "partial lump sum settlement" in the sum of $150 together with the written consent of the petitioner to the granting of such petition. Prior thereto, March 8, 1926, the Commission issued an order for claimant to appear before Dr. John W. Riley of Oklahoma City, and submit to a physical examination. Whether or not such examination was made does not appear from the record.

On April 2, 1926, the Commission entered its finding and order as follows:

"Now, on this the 2nd day of April 1926, the State Industrial Commission being regularly in session, this cause comes on in its regular order to be considered pursuant to the application of the claimant for a lump sum payment, and the Commission, having examined all the records on file in said cause, and being otherwise well advised in the premises, finds the following facts:

"1. That the claimant sustained an accidental injury arising out of and in the course of his employment with the respondent herein on October 30, 1925.

"2. That, as a result of said accidental injury, the claimant herein has lost the sight of the right eye.

"3. That the claimant's average wages at the time of the injury were $135 per month.

"The Commission is of the opinion: By reason of the aforesaid facts, the claimant herein is entitled under the law to compensation at the rate of $18 per week for a period of 100 weeks, computed from the five days' waiting period beyond October 30, 1925, a total sum of $1,800.

"And it appearing: That 21 weeks should have been paid to March 31, 1926, and it further appearing that it would be to the interest of claimant and in the furtherance of justice to commute to a lump sum the last 66 weeks' compensation, amounting to $1,188, the present worth of which is, after deducting three per cent. compound discount, $1,157.07, and it further appearing that at this time the expectancy of life of the claimant extends beyond 66 weeks from March 31, 1926,

"It is ordered: That within 20 days from this date, the respondent herein pay to claimant $1,157.07, in one lump sum, be-

ing the present worth of the last 66 weeks' compensation due in this cause, and also to pay said claimant any compensation that may be due to March 31, 1926, and pay all medical expenses incurred by claimant as a result of said accident."

On April 17, 1926, there was filed with the Commission a receipt signed by claimant showing payment of the sum of $1,-157.07, and thereafter, on July 7, 1926, there was filed with the Commission a second receipt signed by claimant, reading as follows:

"Received of Sinclair Oil & Gas Company the sum of $72, which, together with payments heretofore made to me aggregate the total of $1,769.07; as provided by the award heretofore made by the State Industrial Commission, which is in full payment of compensation on account of the loss of my right eye due to injuries sustained on the 30th day of October, 1925, while in the employ of said Sinclair Oil & Gas Company.

"Dated at Nowata, Okla., this 1 day of July, 1926."

On September 2, 1926, the Commission entered an order, which, after reciting the appearances, reads:

"* * * After reviewing the testimony taken at said hearing, all reports on file and being otherwise well and sufficiently advised in the premises, finds:

"1. That heretofore on the 2nd day of April, 1926, an order was made and entered in this cause, awarding claimant compensation for the accidental injury which he sustained, arising out of and in the course of his employment with the respondent herein on October 30, 1925, in the amount of 100 weeks at the rate of $18 per week, computed from November 4, 1925.

"2. That it was agreed between all parties at the hearing on said 2nd day of April, 1926, that this cause should be continued to determine extent of permanent disfigurement resulting from said accidental injury.

"3. That said aforementioned accidental injury, which the claimant sustained on October 30, 1925, has resulted in serious permanent facial disfigurement, consisting of: There is an indentation of the right side of the forehead over the eye for an area of about the size of one-half dollar, this indentation there being caused by a loss of part of the supraorbital ridge of the frontal bone; and oblique scar extending from the inner angle of the right supraorbital region down along the side of the nose to within one-half inch of the lower jaw, it being about eleven cm. long and being displaced and carried the inner angle of the eyelids downwards, the scar being adherent along the nose. There appears to be a bony base to the depressed supraorbital region of the scar.

"The Commission is of the opinion: By reason of the aforesaid facts, that claimant is entitled to compensation in the sum of $2,200 for serious and permanent disfigurement of his face as a result of said aforementioned injury. * * *"

The order then awarded claimant the sum of $2,200, "as compensation in full for serious permanent disfigurement of claimant's face as a result of the aforementioned accidental injury which is in addition to compensation heretofore paid for loss of claimant's right eye."

On September 11, 1926, receipt showing payment of the $2,200, thus awarded, was filed with the Commission. No further proceedings appear to have been taken until March 11, 1931, at which time claimant filed with the Commission an application to reopen the cause, which, after reciting the two former awards, reads:

"Petitioner shows to the court that the nature of the injury was a blow on the right side of the face and forehead, which resulted in the loss of the right eye of claimant, and the removal of a portion of the frontal skull.

"That within the past 90 days claimant has again begun to suffer great pain in the frontal region of his head where the portion of the skull had been removed, which was accompanied by a swelling of the soft membrane now covering that portion of his skull which had been removed, and some form of knot or growth is developing therein which causes this claimant continuous pain and suffering, and prevents him from performing his usual and customary labors unless he resorts to the use of some medicine to alleviate the same.

"That about the middle of December, 1930, respondent placed claimant in a hospital in Tulsa to determine the nature and extent of the present inflammation and condition of the said eye-socket and forehead, but refused to make any adjustment or to pay any compensation for same.

"Claimant further shows to the court that his present condition is directly traceable and attributable to and a direct result of said accidental injury, and that as far as your claimant is advised or can ascertain there has been no intervening cause contributing thereto.

"Petitioner further shows to the court that this question of injury was not covered by any previous award or taken into consideration in the making of same by this honorable Commission.

"Wherefore, petitioner asks the court to

reopen this case and to set this petition for hearing at the next sitting of this court, and that the present condition of claimant be determined."

The hearing was ordered on this application for May 15, 1931, and after such hearing the State Industrial Commission entered its finding as follows:

"And the Commission, after reviewing the testimony taken at said hearing and examining all records on file, and being well and sufficiently advised in the premises, makes the following findings of fact:

"1. That the claimant, Arthur Olinger, sustained an accidental injury arising out of and in the course of his employment with the respondent herein on October 30, 1925, said injury being to his eye, causing loss of sight of right eye.

"2. That the claimant's average wage at the time of said accidental injury was $125 per month.

"3. That claimant was paid compensation for all temporary total disability resulting from the aforementioned accidental personal injury, and the case was closed.

"4. That the claimant filed his motion to reopen said cause to a changed condition with the Commission March 11, 1931.

"5. That the claimant is in need of further medical treatment."

Then enters its conclusions as follows:

"The Commission of the opinion: By reason of the foregoing facts, that claimant is entitled, under the law, to compensation for temporary total disability to his right eye which shows a change of condition for the worse, computed from March 11, 1931, the date the motion was filed, to this date, being 24 weeks at the rate of $18 per week, amounting to $432, and to continue weekly payments from this date until otherwise notified, and to furnish such medical care as may be necessary at this time, due to said Injury."

Compensation was awarded in accord therewith.

Petitioner first assails the finding of the State Industrial Commission in that under the order of April 2, 1926, claimant was paid for temporary total disability.

Attending physician's report of the injury, employer's report of injury and report of initial payment, all show that claimant's right eye was destroyed by the accidental injury. The finding of the State Industrial Commission of April 2, 1926, was "that, as a result of said accidental injury claimant has lost the sight of the right eye." The first award was for compensation at the maximum rate of $18 per week

for 100 weeks, the amount fixed by law for the loss of one eye. The uncontradicted evidence at the latter hearing was that claimant's right eye was totally destroyed by the accident and that the right eyeball was removed shortly after the accident. There is not the slightest evidence in the record showing or tending to show that the compensation award of April 2, 1926, was for "temporary" total disability, or that it was intended as such. There is no evidence that claimant was ever paid anything for temporary total disability. He may have been temporarily totally unable to perform any labor during what is termed a healing period, but no claim was filed and no award was made therefor.

Petitioner also contends that there is no provision of law authorizing the additional award after the maximum amount fixed by law for the loss of an eye has been paid. This would be true under the holding of this court in Cameo-Blackstone Coal Co. v. Purcell, 153 Okla. 21, 4 P. (2d) 753, and I. T. I. O. Co. v. Ray, 153 Okla. 163, 5 P. (2d) 383, had the petition of claimant, joined by petitioner, been for a full lump sum settlement, for it is there held that where such petition is filed and approved by the Commission and payment made, the State Industrial Commission has no further jurisdiction under section 7325, C. O. S. 1921, as amended by chapter 61, S. L. 1923. But such is not the case. The petition filed by claimant was not for a final settlement and payment, but was for a partial lump sum award. The award ordered paid in a lump sum was for the last 66 weeks of the total 100 weeks commuted to its then present worth, which the Commission found to be $1,157.07, after deducting three per cent. compound discount, and the further order to pay whatever remained unpaid of the first 21 weeks' compensation, being from the date of the injury less the five-day waiting period, to March 31, 1926, thus leaving 13 weeks' compensation to be paid in weekly payments of $18. It also appears that the case was, by agreement, left open for the purpose of thereafter determining the matter of an award for disfigurement which was afterwards done and an award made therefor in the sum of $2,200. No proceedings to review the latter award having been taken, it, of course, became final, and the cause was not subject to be reopened for the purpose of awarding anything further for disfigurement.

No proceedings having been taken to review the award of April 2, 1926, that award likewise became final and the cause was not

subject to be reopened for further compensation on account of the loss of the eye alone, and could be reopened only upon a showing of a change of condition other than the mere loss of the eye. Marland Prod. Co. v. Hogan, 146 Okla. 220, 294 P. 115; Roxana Pet. Co. v. Hornberger, 150 Okla. 257, 1 P. (2d) 393. The contention of petitioner is that the injury for which compensation was awarded being the loss of an eye, for which compensation is allowable for 100 weeks, no more or no less, there can be no change of condition and therefore no further compensation. Where there is a permanent total loss of an eye and no other injuries in connection therewith, and compensation is made therefor for the period of 100 weeks as prescribed by law, there can, of course, be no subsequent change of condition for the worse so far as the loss of the eye is concerned. But it does not necessarily follow that there could not arise conditions caused by the injury which would cause disability other than or in addition to the loss of the eye. For instance, suppose that after the total permanent loss of an eye and the removal of the eyeball by a surgical operation, as in this case, an award is made therefor, for the 100 weeks provided by law, and such award is paid, and thereafter the other eye should become affected caused directly by the accidental injury or the operation removing the eyeball, could the cause then be reopened and further compensation awarded? This court has in a number of cases decided that in such circumstances the cause might be reopened upon a showing of a change of condition.

In the instant case, the record shows that in addition to the destruction of the eye, that is, the total loss of the eye, the frontal bone above the right eye was fractured and a part thereof was removed leaving a depression over the eye. Several years thereafter claimant began to suffer severe pains in his head; his face became swollen and a condition described as "a growth of some kind," developed at the place where the frontal bone had been fractured. The physicians were uncertain as to what caused this condition. One said that it might be a nerve injury or it might be an injury to a "lymph gland." The physicians were likewise uncertain as to whether the change was caused directly by the original injury or because of failure of claimant to keep the eye socket properly cleansed: The evidence on this point was in conflict. But that was a question of fact for the Commission. The opinion of the Commission was that compensation should be allowed "for temporary total disability to his right eye, which was a condition for the worse."

This we think was error. The Commission was without authority to award further compensation for and on account of the loss of the eye.

There is some evidence to justify a finding of a change of condition. The Commission must find such change before a further award may be made.

The Commission should make findings of fact as to whether there is a change of condition, and, if so, to what extent; whether or not there is a present disability, other than a loss of the sight of the right eye, and, if so, the extent thereof; whether or not such disability, if found to exist, is attributable to or caused by the original accident; whether the same is temporary or permanent. If upon such finding claimant is entitled to further compensation, the award should be made in accord with such findings. If award be made for temporary disability, it must be limited to 300 weeks. If it be for permanent disability, it must be limited to that number of weeks, which, when added to the number of weeks for which compensation has already been paid, the total compensation would not exceed that payable for permanent total disability, i.e., 500 weeks. If the award be for temporary or permanent partial disability, it must be based upon difference in earning capacity before and after the accidental injury, unless the subsequent disability be due to loss or injury of another specific member.

The findings and award are vacated and set aside, and the cause is remanded to the State Industrial Commission for further proceedings in accord with the views herein expressed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. CULLISON and McNEILL, JJ., absent.