## MILLING MACHINERY, JONES-HETTEL-SATER CONST. CO. et al. v. THOMAS et al.

No. 25807. Sept. 17, 1935.

Rehearing Denied Oct. 8, 1935.

Application for Leave to File Second Petition for Rehearing Denied Nov. 5, 1935.

Butler & Brown, for petitioners.

Wilson & Wilson, for respondents.

RILEY, J. This is a proceeding for review of an award of the State Industrial Commission.

Respondent Thomas files a cross-petition for review.

Petitioner admits the accidental injury and liability therefor, but complains that the award is excessive. Cross-petitioner contends that the award, so far as made, is correct, but complains because the Commission did not award him compensation for disfigurement.

The injury is the loss of the use of one eye. Because of the accidental injury it became necessary to remove the eyeball, and it is on that account that claimant claims compensation for disfigurement.

The award was for temporary total disability from April 2, to May 21, 1934, less five-day waiting period, and 100 weeks for total loss of use of one eye at $15.58 per week.

At the time of his injury claimant had been employed by Jones Hettelsater Construction Company as a common laborer, at a daily wage of $3.15. He had been so employed from January 6, to April 2, 1934. For ten months or more before December 30, 1933, he had been employed by Hacker Flour Mills at Jefferson Okla., at a weekly wage of $24.

He testified that his work for the flour mills was that of a common laborer. His duties there were general "work, unloading,

sweeping the mill and any other labor he might be called upon to perform."

On December 30, 1933, the flour mill was destroyed by fire, and thereafter the Hacker Flour Mills contracted with Jones-Hettelsater Construction Company for the reconstruction of the mill and installation of machinery. In order that its organization be kept together, the Hacker people requested the contractor to employ, as far as possible, the employees of the mill. The construction company did employ claimant, and claimant was assisting, as a common laborer, in installing machinery in the mill when he was accidentally injured. He returned to work for Hacker on May 21, 1934, but not at Jefferson. He went to work running an elevator at Renfro.

The record does not show what wages he received at Renfro.

The Commission found that the average wage of claimant at the time of his injury was $101.50 per month, and the award was based upon that wage.

Petitioner contends that under the evidence the award should have been based upon a weekly wage of $18.70, or $3.15 per day, that being the wage that claimant was receiving at the time of the injury.

Petitioner contends that subdivision 2 of section 13355, O. S. 1931 (section 7289, C. O. S. 1921), is the applicable provision of the statute in arriving at the previous earning capacity of claimant as a basis of the award to be made. Such provision is:

"If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of 300 times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed."

If such provision is applicable, the average weekly wage would be $18.70, and the weekly award would be two-thirds, or $12.46.

Subdivision 1 of said section provides:

"If the injured employee shall have worked in the employment in which he was working at the time of the accident, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of 300 times the average daily wage or salary which he shall have earned in such employment during the days when so employed."

It is apparent that subdivision 1 is not applicable. Claimant had not worked in the employment in which he was working at the time of his injury during substantially the whole of the year immediately preceding his injury. He had been in such employment only 13 weeks. Therefore, subdivision 1 could not apply. Subdivision 2 could not apply for the reason that there was no evidence as to the average daily wage or salary of an employee of the same class working the whole of such immediately preceding year in the same or similar employment in the same or neighboring place. In fact, there was no evidence that there was employment of the same or similar line or class in that or a neighboring place for substantially the whole of the immediately preceding year. The only evidence of the same or similar employment was that which the construction company was giving. They were not engaged in such business in that or a neighboring place for substantially the whole of the year next preceding the injury. The award could not properly have been made under subdivision No. 2, under the evidence in the record.

The methods prescribed by subdivisions 1 and 2, supra, not being reasonably and fairly applicable, resort must be had to subdivision No. 3, which provides:

"If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident." (Quoted from section 7289 C. O. S. 1921, not complete in section 13355, O. S. 1931.)

Thereunder regard must be had for the previous earnings of the injured employee and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality.

The previous earnings of claimant under the evidence was $24. per week (six days) for 39 weeks of the year next preceding the injury. The work was not identical, but under the evidence it was the most similar employment, viz., common labor, and he had some of his co-employees were of the most similar class mentioned in the record.

For 13 weeks immediately before the injury claimant, and other common laborers

in the same employment as that of claimant, had been receiving $18.70 per week.

The wages so received throughout the year reasonably represent the annual earning capacity of claimant. The sum so earned was: 39 weeks at $24—$936, plus 13 weeks at $18.70—$243.10; making a total of $1,-179.10, or an average weekly wage of $22.68. The award should have been for $15.12 instead of $15.58.

Claimant asserts that the total earnings of claimant for the year next preceding his injury were $1,221.80, and one-twelfth thereof is $101.50, the amount found by the Commission to be his average monthly wage. If that is the basis upon which the Commission computed the average monthly wage, there is manifest error therein. The total earning shown in the statement of former employer, which was filed as per stipulation, is $1,221.-80. But an examination thereof shows that it includes payment for 54 weeks; 40 weeks by Hacker Mills at $24, and 14 weeks for Jones-Hettelsater at $18.70. That would be two weeks more than one year. The date of the injury was April 2, 1931.; the first week's payment shown on the statement was for the week ending April 1, 1933, which was not within the year. The last payment shown on the statement was for the week ending April 7, 1934. Six days of that week were not within the year. The total actual earnings within the year next preceding the injury were therefore $1,179.10, and no more.

On the cross-petition of claimant the record shows that after the eyeball was removed claimant was fitted with an artificial glass eyeball. Two or three had been tried and none of them was an exact fit. The eye specialist, who testified for claimant, said in substance that there was no apparent reason why an artificial eyeball could not be fitted in the socket, and when so done there would be but little, if any, noticeable difference in claimant's appearance.

Section 13356, O. S. 1931, among other things, provides for compensation for the specific injury of loss of an eye, and fixes the number of weeks during which compensation shall be paid therefor at 100, and the rate at 66⅔ per centum of the average weekly wages, and further provides that compensation for such specific injuries shall be in lieu of all other compensation except medical treatment, care, etc., as provided in section 7288, C. O. S. 1921 (O. S. 1931, sec. 13354).

It has been held that compensation for such specific injuries does not preclude re-

covery of compensation for temporary total disability during "healing time."

The compensation for total temporary disability allowed in this case comes within said holding.

Said section (sec. 13356) further provides:

"In case of an injury resulting * * * in serious and permanent disfigurement of the head, face or hand, compensation shall be payable in an amount to be determined by the Commission, but not in excess of three thousand ($3,000) dollars; provided that compensation for * * * permanent disfigurement shall not be in addition to the other compensation provided for in this section, but shall be taken into consideration in fixing the compensation otherwise provided."

The meaning of that part of the section is not clear. Unquestionably the Legislature intended to allow compensation for an injury resulting in serious and permanent disfigurement of the head, face or hand, and to limit the same in any case to $3,000. But what is meant by the proviso "that compensation for the loss of hearing or permanent disfigurement shall not be in addition to the other compensation provided for in this section, but shall be taken into consideration in fixing the compensation otherwise provided," is confusing.

This proviso was considered in Seneca Coal Co. v. Carter, 85 Okla. 220, 205 P. 495. It was there held that the State Industrial Commission was authorized to award an injured employee compensation for a permanent disfigurement of the face, although such employee had been awarded compensation for the loss of an eye. But there was disfigurement of the face in addition to and separate from the loss of the eye. In this case there is no disfigurement except that resulting directly from the loss of the eyeball. The third paragraph of the syllabus in Seneca Coal Co. v. Carter, supra, is fairly applicable to such a situation. It is:

"Where an injured employee has been compensated for a specific injury, such injured employee is not entitled to compensation again for such injury as constituting a part of a permanent disfigurement."

Construed as the provision was in that case, it appears to mean that where an employee has suffered a specific injury such as the law provides a definite number of weeks' compensation based upon his average earnings, and an award has been made therefor, such injury, though causing a disfigurement, is wholly covered by the award provided by law, and that no separate award may be made for the disfigurement which

results wholly from the specific injury. But where there is a disfigurement arising out of the same accident, and not arising wholly from the specific injury, compensation may be made for the disfigurement and also for the specific injury. And if the disfigurement as a whole includes disfigurement as a direct result of the specific injury, that part of the disfigurement is not to be considered in the award for disfigurement. If in this case the same accident had caused disfigurement of any part of claimant's head, hands, or face other than that caused by the loss of the eye, compensation could be awarded therefor. But no allowance could be made for that part of the disfigurement caused by or resulting from the loss of the eye.

Under the facts shown by the evidence in this case, there was no error in not allowing compensation for disfigurement. The award made must be modified to a weekly amount of $15.12, instead of $15.58.

The cause is remanded to the State Industrial Commission, with directions to enter an award accordingly.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.