2006 OK CIV APP 99

**Donald BOWERS, Petitioner,**

v.

**GLEN EAGLE APARTMENTS, Jessie L. Webber, Jr., CNA Insurance Group, and The Workers' Compensation Court, Respondents.**

**No. 102,888.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 20, 2006.

Susan H. Jones, WILSON JONES, P.C., Tulsa, OK, for Petitioner.

James B. Cassody, McGivern, Gilliard, & Curthoys, Tulsa, OK, for Respondents Glen Eagle Apartments, Jessie L. Webber, Jr., and CNA Insurance Group.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶1 Petitioner Donald Bowers appeals from the Workers' Compensation Court's Order denying him additional permanent partial disability for the loss of his left eye. The trial court held that because Bowers had previously been awarded 100% PPD for the loss of use of his left eye, he was not entitled to additional PPD benefits for the physical loss of that eye. On *de novo* review, we find Bowers was not entitled to PPD compensation for the anatomical loss of his eye in addition to the 100% PPD benefits he received for the loss of use of his eye. We further find no support for Bowers's claim for additional PPD benefits based on the amendment of 85 O.S. § 22(3) since his original injury. We therefore sustain the order from which Bowers appeals.

¶2 Bowers injured his left eye in a work-related accident July 10, 1989.[1] The Workers' Compensation Court's September 6, 1991 Order found that Bowers sustained 100% PPD to the left eye, for which he was entitled to 200 weeks of compensation totaling $32,016.[2] The court also awarded TTD benefits for the period from August 2, 1989 to January 11, 1990.[3]

¶3 The Workers' Compensation Court issued its Order Authorizing Medical Treatment January 25, 1999, in which it authorized surgery and placement of a prosthetic left eye. Bowers then sought additional PPD benefits, which led to the Order from which

---

1. Bowers was painting for Respondents Glen Eagle Apartments and Jessie L. Webber Jr. (Employer) when he hit a light fixture with his head and the broken glass from the fixture got in his left eye. At the time of his injury, Bowers was employed by Webber, and performing work for Glen Eagle Apartments, which the court found secondarily liable.

2. At the time of Bowers's work injury, 85 O.S.Supp.1987 § 22(3) provided that claimants were entitled to 200 weeks of PPD benefits "(f)or the loss of an eye."

3. In an Order filed July 7, 1994, the Workers' Compensation Court found Bowers suffered a change of condition for the worse and awarded additional TTD benefits from September 9, 1993 through June 13, 1994.

he now appeals. The December 2, 2005 Order at issue here provided, in pertinent part:

THAT claimant has been previously adjudicated to have sustained 100% permanent partial disability to the LEFT EYE by order filed SEPTEMBER 6, 1991. Since that time, claimant's LEFT EYE has been surgically removed and an artificial eye has been placed in the left eye socket. Claimant now seeks an additional 100% permanent partial disability to the LEFT EYE for its anatomical loss, asserting that the previous award was for 100% functional loss. The Court observes, however, that if claimant's original injury had resulted in the anatomical loss of the eye, claimant would have received a maximum of 100% for such an injury. The Court finds no legal ground for awarding additional permanent partial disability. Claimant's request for additional permanent partial disability is DENIED as a matter of law.[4]

¶ 4 The facts are not disputed. Whether a claimant is entitled to two separate awards of 100% PPD, first for the functional loss and then for the later anatomical loss of an eye, is a question of law. We therefore review the matter *de novo. B.E. & K. Const. v. Abbott*, 2002 OK 75, 59 P.3d 38, n. 1; *Ibarra v. Hitch Farms*, 2002 OK 41, ¶ 4, 48 P.3d 802. Under this standard, this court has plenary, independent and non-deferential authority to address legal issues. *American Airlines v. Hervey*, 2001 OK 74, ¶ 11, 33 P.3d 47.

█ ¶ 5 In his appellate brief, Bowers has failed to acknowledge that the Workers' Compensation Act equates loss of use with loss of the member in the case of scheduled member injuries: "Loss of Use: *Permanent loss of use of* a thumb, finger, toe, arm, hand, foot, leg or *eye shall be considered as the equivalent of the loss of such* thumb, finger, toe, hand, arm, foot, leg or *eye.*" 85 O.S.2001 § 22(3) (emphasis added).[5]

¶ 6 Instead, Bowers asserts that despite the 1991 adjudication of 100% PPD to the left eye, in 1991 he "still had vision in the eye sufficient to see shadows, differentiate light and darkness, could see colors at certain angles and retained some depth perception." Bowers asserts he lost that amount of vision, along with the eye itself, when his left eye was removed. At the September 19, 2005 hearing, Bowers agreed that before his eye was removed, the Snellen charts showed he had "a hundred percent loss to the eye."

¶ 7 Bowers relies on cases in which a claimant who had prior vision defects, but who retained sufficient vision in the affected eye to work, later lost that eye or its use. The rule in such cases is that the compensation for loss of the eye is not reduced by the prior *partial* impairment of the eye. See *Protein Technologies Intl./Ralston Purina v. Hammock*, 1994 OK CIV APP 21, 876 P.2d 728 (cert.denied); *Standard Testing and Engineering v. Bradshaw*, 1968 OK 62, 442 P.2d 337; *Eagle–Picher Mining & Smelting Co. v. Murphy*, 1934 OK 441, 35 P.2d 952, 169 Okla. 180.[6] Bowers urges that this rule means the Workers' Compensation Court may award more than 100% PPD. However, the cases invoking that rule are distinguishable. In those cases, the employee previously had partial vision impairment which did not affect the employee's capacity to work. The later work-related loss of the eye or its use is the

---

4. The order also directed Employer to provide Bowers with continuing maintenance of the artificial eye and necessary doctor's visits with an eye restoration clinic.

5. The Oklahoma Supreme Court has likewise held that the permanent loss of use of an eye constitutes loss of the eye. *Special Indem. Fund v. Fellows*, 1953 OK 274, 261 P.2d 899.

6. In *Kerr Glass Co. v. Parr*, 1953 OK 330, 263 P.2d 728, 731, The Oklahoma Supreme Court explained:

The general rule is: Where a workman has sustained an injury to a specific member of his body resulting in some personal disability to the member and he thereafter sustains a subsequent injury causing additional permanent disability thereto less than total loss of the use of the member he may only recover compensation for the percentage disability sustained by the last injury alone.

The rule, however, is otherwise when the last injury results in total loss of the use of a member. In that event the entire disability will be attributed to the last injury alone and the workman may recover compensation for total loss of the use of the member rather than such percentage of disability as was sustained by the last injury alone.

(Citations omitted).

loss subject to 100% PPD without reduction for prior partial disability. For example, a worker who wears glasses and loses an eye (or the use of the eye) in a work-related injury is entitled to full compensation for the loss (or loss of use) of the eye, without deduction for the disability requiring glasses. That circumstance is entirely different than the case here, where there was one work-related injury which led to an award of 100% PPD for the loss of use of the eye, followed by the later loss of the eye itself due to complications.

¶ 8 In this case, the Workers' Compensation Court adjudicated Bowers as having 100% PPD due to loss of use of his eye in 1991. At the time he was awarded the amount of compensation allowed by statute for loss of the eye, a scheduled member. Bowers's claim for benefits for the physical loss of the eye itself is an attempt to double the 100% PPD benefits he has previously received, despite the plain language of the statute that loss of use is the equivalent of loss of the eye. And, Bowers's testimony that he could see some shadows and light in his left eye does not suggest he was able to work using that eye (his ability to work using the other eye is not relevant). Before his left eye was removed, Bowers did not suffer partial impairment of his vision in that eye; he had been compensated for the loss of the eye. The rule in *Protein Technologies* is not applicable in this case.

¶ 9 The Oklahoma Supreme Court has held that where a claimant has suffered the loss of an eye, or the loss of its use, and has been awarded the statutory compensation for the loss of the scheduled member, there can be no further award of compensation for the loss of that same member. *Sinclair Oil & Gas Co. v. State Indus. Com'n,* 1932 OK 134, 8 P.2d 72, 155 Okla. 116. In *Sinclair,* the claimant lost his eye and part of his skull when he suffered a blow to the face while working. In 1926, the claimant was awarded full compensation for the loss of an eye. In 1931, the claimant sought additional compensation based on pain and swelling in the eye socket and in the area where part of his skull was removed. The Industrial Commission ordered additional TTD, but the Supreme Court reversed and remanded for a finding whether the claimant had suffered a change of condition for the worse not involving the lost eye. The court explained: "(w)here there is permanent total loss of an eye and no other injuries in connection therewith and compensation is made therefor for the period of 100 weeks as prescribed by law, there can, of course, be no subsequent change of condition for the worse so far as the loss of the eye is concerned." *Id.* at 75.

¶ 10 Bowers does not make a claim that the anatomical loss of his eye entitled him to compensation for disfigurement. However, we raise the issue to point out that § 22(3) expressly provides "that compensation for permanent disfigurement *shall not be in addition* to the other compensation provided for in this section, . . . ." (Emphasis added). The Oklahoma Supreme Court has explained that where the disfigurement involves no more than the loss of the member, there is only one recovery for the loss of the member, with no compensation for disfigurement:

> where an employee has suffered a specific injury such as the law provides a definite number of weeks' compensation based upon his average earnings, and an award has been made therefor, such injury, though causing a disfigurement, is wholly covered by the award provided by law, and that no separate award may be made for the disfigurement which results wholly from the specific injury. But where there is a disfigurement arising out of the same accident, and not arising wholly from the specific injury, compensation may be made for the disfigurement, and also for the specific injury. And if the disfigurement as a whole includes disfigurement as a direct result of the specific injury, that part of the disfigurement is not to be considered in the award for disfigurement. If in this case the same accident had caused disfigurement of any part of claimant's head, hands, or face other than that caused by the loss of the eye, compensation could be awarded therefor. But no allowance could be made for that part of the disfigurement caused by or resulting from the loss of the eye.

*Milling Machinery, Jones–Hettelsater Const. Co. v. Thomas,* 1935 OK 820, 50 P.2d 395,

398, 174 Okla. 483. Where a claimant has been compensated for the loss of the eye, he is not to be compensated again for disfigurement attributable to the loss of the eye. *Seneca Coal Co. et al. v. Carter et al.,* 1922 OK 90, 205 P. 495, 85 Okla. 220.

¶ 11 On *de novo* review, we find that a claimant may not be compensated twice for the loss of the same scheduled member, either for later anatomical loss or for any disfigurement resulting from the loss of the eye alone. We conclude that under § 22(3), the loss of use of the eye is equivalent to loss of the eye. The statute does not allow an award of more than 100% PPD for the loss of a scheduled member, in this case, an eye. Bowers received full compensation for the loss of his eye in 1991. He is not entitled to additional compensation for the same loss now.

▬ ¶ 12 Bowers's other argument on appeal is that the law in effect at the time of reopening a claim on a change of condition applies, and in this case requires awarding additional compensation to him. Bowers asks this court, alternatively to finding he is entitled to another award of 100% PPD for loss of the eye, to award him an additional 50 weeks of PPD based on the statute in effect at the time of his claim for additional PPD.[7] Bowers did not raise this issue in the hearing below. Regardless, this argument is without merit. An award of permanent disability for a change in condition is governed by the statutory language in effect at the time of the initial injury. *King Manufacturing v. Meadows,* 2005 OK 78, ¶¶ 9–11, 127 P.3d 584.[8] In this case, at the time of Bowers's injury, § 22(3) provided for 200 weeks PPD for the loss of an eye. The 1991 Order awarded Bowers 200 weeks of compensation. At the time of his 2005 quest for additional PPD benefits for the physical loss of the eye, § 22(3) directed that the loss of an eye was entitled to 250 weeks of PPD. 85 O.S.2001 § 22(3). *King Manufacturing* clarified that for substantive issues such as the amount of compensation to which a claimant is entitled, the law in effect at the time of the original work-related injury applies:

> The general rule is that the law in effect at the time of an employee's injury controls in workers' compensation matters. A compensation claim is controlled by the laws in existence at the time of injury and not by laws enacted thereafter. The right of an employee to compensation arises from the contractual relationship existing between the employee and the employer on the date of injury. The statutes then in force form a part of the contract and determine the substantive rights and obligations of the parties. No subsequent amendment can operate retrospectively to affect in any way the rights and obligations which are fixed.

*Id.* at ¶ 11 (citations omitted). Bowers is not entitled to an additional 50 weeks of PPD based on the law in effect at the time of his claim for additional PPD benefits.

SUSTAINED.

ADAMS, J., and MITCHELL, P.J., concur.

▬▬▬▬▬▬

---

7. The Form 9 Bowers filed May 17, 2005, indicated the issues to be tried were PPD and medical maintenance. Bowers did not circle the "motion to reopen" language on the Form 9.

8. Bowers relies on authority distinguished by *King Manufacturing: Arrow Tool & Gauge v. Mead* 2000 OK 86, 16 P.3d 1120; *Wolfenbarger v. Safeway Stores, Inc.,* 1990 OK CIV APP 65, 798 P.2d 1093; *Earl W. Baker & Co. v. Morris,* 1935 OK 591, 54 P.2d 353, 176 Okla. 68.