BOOTH, Judge.
This cause is before us on appeal from an order of the deputy commissioner dated September 17, 1986, denying claimant an award of attorney fees for services rendered in obtaining benefits due as a result of an accident occurring on August 11, 1982. The deputy’s order expressly found that there was no “bad faith” on the part of the employer/carrier (E/C) which would allow the award of fees under Section 440.-34(3)(b), Florida Statutes. Also raised, but not expressly referred to by the deputy, is subsection (3)(c) of the statute, allowing fees where the E/C denies compensability.[1]
The facts are that claimant, a 50-year-old laborer, injured his back in August of 1982 in a work-connected accident. As a result of this accident, he suffered a herniated disc at L5, SI (low back). The E/C initially paid benefits (temporary benefits from Oc *417 tober 21, 1982, to June 29, 1983; wage loss from June 29, 1983 until January 27, 1984). Dr. Kissam, the authorized treating physician, recommended surgery, but claimant was reluctant to undergo an operation, and Dr. Kissam treated him conservatively until May of 1983, when that doctor retired. Claimant’s pain continued, and he was taken by the carrier’s rehabilitation specialist to Dr. Sypert, a neurosurgeon at Shands Teaching Hospital, who again diagnosed a herniated disc at L5, SI and recommended chemonuecleolysis and an intensive program of rehabilitation. On May 15, 1984, Dr. Sypert recommended this course of treatment to the carrier, stating that claimant was ready “to go forward with chemo-nuecleolysis.” On the same day, May 15, 1984, the E/C filed a notice to controvert the entire claim and ceased payment of all benefits. The E/C unilaterally canceled claimant’s previously-scheduled surgery.
The E/C’s May 1984 notice to controvert gave the reason that “[c]laimant’s physical condition reverted back to condition as existed prior to the injury of August 11,1982, but following his July 1978 injury.”[2]
Claimant was successful before the deputy in establishing causal connection, need for medical treatment, and disability benefits. In the first order (July 19, 1984), the deputy found the accident compensable, rejected the E/C’s contention that claimant’s condition was related to a 1978 accident, and awarded the medical treatment recommended by Dr. Sypert and “temporary total disability or temporary partial disability ... from March 1,1984 so long as claimant is entitled to such benefits.” This court affirmed “PCA” in May 1985, with the mandate going down on June 10, 1985.
During the first contest before the deputy and appeal to this court, a period of more than ten months, the E/C essentially abandoned claimant. The E/C conceded that it did not monitor the case and that it did not advise claimant that he needed to perform work searches during that period. The E/C did not furnish wage-loss forms as required by Rule 38F-3.019, Florida Administrative Code. Claimant contacted the E/C but was told that the E/C had no obligation to advise him and that he should consult his attorney. The record indicates that claimant believed that after entry of the first order (July 1984) awarding benefits, he was not required to perform further work searches. The E/C did not inform him otherwise. Claimant was ultimately able to obtain some help at a Veterans Administration hospital, where he was given pain medication. The E/C finally offered wage-loss forms by letter dated June 4,1985, but benefits due for July 1984 through June 1985 were not paid until April 25, 1986.
After the affirmance of the deputy’s first order, the E/C complied in part with the award but contested wage loss during the appeal because of lack of a work search or medical evidence of disability. It should be remembered that claimant, a 54-year-old laborer with a bad back, was without a job, benefits, or a physician, and had received neither information nor forms from the E/C concerning work searches during the period of time for which the E/C contested payment of benefits.
Claimant was required to file yet another claim, in June of 1985, to obtain the wage-loss benefits. Hearing on that claim was held on February 3, 1986, and the deputy, by order dated April 5, 1986, found claimant was “temporarily totally disabled” from July 19, 1984, until December 21, 1985. The deputy excused a job search due to claimant’s physical condition and required medical benefits be paid.
In the order now under review, the deputy denies attorney fees based on two findings. First, the deputy found that the E/C’s “resisting” the 1984 award and taking an appeal from the first order did not *418 constitute “bad faith.” The deputy found that the E/C’s position, though not successful, was “reasonably arguable.” This court should not disturb that factual determination. The fact that the deputy ultimately rejected the E/C’s contentions and that claimant won the benefits sought does not establish that the E/C’s continued resistance and pursuit of judicial review was bad faith.
The deputy’s second finding and basis for denial of attorney fees relates to the E/C’s conduct during the appeal of the first order as to benefits payable under that order. The deputy ruled as follows:
As to the benefits payable under the April 25, 1986 order, being temporary total from July 19, 1984 to December 2, 1985, I also find that there was no conduct that would qualify as legal “bad faith”. The carrier relied upon the fact that there was no medical evidence to substantiate] temporary total during that time and there was no job search as would ordinarily be required. The fact that the undersigned ultimately, in the April 25,1986 order excused the claimant from his legal obligation to do a job search and the alternative legal obligation to provide medical documentation of total disability is retrospective and cannot be used as evidence of bad faith on the employer/carrier’s part at the time the decisions were being made. In arriving at these conclusions, I have taken into consideration a review of the entire record before me, including the transcript of all prior hearings and the prior injury. I have also taken into consideration the testimony of claims representative Del Meliti and the documents admitted into evidence as employer/carrier’s Composite Exhibit # 1 clearly indicating that the employer/carrier was operating under advice of counsel which also displays no “bad faith”.
Examination of the record and of the specific testimony of claims representative Del Meliti shows that the E/C admittedly did not monitor the claim nor, in fact, have any contact with claimant during the entire period of appeal for which it denied wage-loss benefits and that it did so on the advice of counsel. Thus, Del Meliti testified at the fee hearing:
Q What information does your file reflect, well let me, does your file reflect that there was any monitoring activity going on by the carrier between August, 1984 and May of 1985 with regard to medical care and treatment, and by that I mean, an investigation as to whether or not Mr. Booker actually did need or require medical care during that period?
A No, but I believe that would be the time that we were appealing, and We had no contact with the claimant since he was represented.
Q And at that time the employer/carrier was aware that Dr. Sypert had recommended surgery in 1984?
A Yes, the file does reflect that, (emphasis added)
The other testimony of this claims adjuster, referred to by the deputy, was a deposition in evidence which is, in pertinent part, as follows:
Q How does your file reflect that Mr. Booker’s medical condition was monitored from the period between August 1984-through May of 1985?
.... [objection to form of question] A I’m sorry, I’m not exactly sure what you’re asking me. Can you clarify that a little bit?
Q How does your file reflect that Nationwide Insurance was keeping abreast of Mr. Booker’s medical condition between August of 1984 and May of 1985?
[[Image here]]
A It appears during that time we were involved in the appeal. We had appealed the order, and I’m sorry, I don’t see any indication.
Q During that time period, was there any monitoring of Mr. Booker’s medical condition?
.... [objection to form of question] A I see no indication of any medical records.
Q Does your file reflect that Mr. Booker’s job search activities were monitored between August of 1984 and May of 1985?
*419 .... [objection to form of question] Q Does your file, reflect that any requests for Temporary Partial Wage Loss Benefit Forms or any Job Search Forms were provided to Mr. Booker between the period of time August 1984 through May of 1985?
MR. LANGDON [counsel for E/C]: We will stipulate they were not.
Q Does your file reflect that any instructions were given to Mr. Booker during that period of time regarding his potential entitlement to temporary partial wage loss benefits or instructions on how to perform a job search?
_ [objection to form of question]
Q Does your file reflect that Nationwide provided any of that information to Mr. Booker during that period of time?
MR. LANGDON: We will stipulate they were not. (emphasis added)
In Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982), this court affirmed the award of attorney fees to a claimant where the employer unilaterally stopped payment of benefits based on a doctor’s report that claimant could return to work. Claimant was unable to find a job until 27 days later, however, and was required to file a claim for benefits due during the period of time. The Scriven case sets out the duties of the E/C to a claimant and with regard to the work search, in part, as follows (418 So.2d at 325-328):
The character and progress of the [work] search is the employer’s or carrier’s business as well as the worker’s. No longer will the employer or carrier abruptly terminate all benefits upon receiving a doctor’s report releasing a still-healing worker to work_ The common incen-
tive of both unemployed worker and employer/carrier to reestablish gainful employment serves the self-executing goals of chapter 440 and, in the employer and carrier, militates against the laissez-faire attitude condemned by this Court in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981)....
A carrier in active contact with a recovering but unemployed worker, monitoring the adequacy and progress of the work search, is a carrier indirectly assisting the search and abundantly serving the purposes for which chapter 440 exists ....
[[Image here]]
Knowing from the doctor’s March 10 report that the worker was still under the doctor’s care for “occasional, back and leg pain” and was to return on April 22 for further medical care, knowing that the worker was then both unemployed and still to achieve maximum medical improvement, knowing when the doctor reported on April 21 that the worker was still experiencing pain as well as “minimal paravertebral muscle spasm,” for which the doctor prescribed a drug, the employer terminated temporary total disability benefits and did nothing to assist the worker in initiating a claim for temporary partial disability benefits....
In these circumstances the employer’s duty was at the very minimum to provide the still healing and still unemployed worker with forms for use in furnishing information pertinent to possible temporary partial disability benefits. Fla.Admin.Code R. 38F-3.19_
[[Image here]]
... This affirmative obligation does not terminate when the employer or carrier initially denies or terminates benefits, nor when the matter takes on adversarial characteristics before the deputy, nor when the employer or carrier contemplates and prosecutes an appeal. The obligation continues, and the “delay or denial” of benefits during the several additional months necessary for an appeal becomes a factor in determining whether the appellant has fairly and expeditiously determined its obligation to place needed benefits in the hands of the injured worker, or whether it has instead acted recklessly in handling the claim. That is the necessary effect of section 440.34(5) which is juxtaposed to the statutory criteria for awarding fees when “a carrier has acted in bad faith with regard to handling an injured worker’s claim *420 and the injured worker has suffered economic loss.”
In the Scriven case and in this case, the E/C stopped payment of benefits at a time when the claimant was not at maximum medical improvement and was known by the carrier in each case to be in need of further medical care. In both cases, the carrier assumed an adversarial position with the cessation of benefits and failed to monitor the claim. In Scriven, however, this court affirmed the deputy’s finding that there was bad faith in failing to pay benefits. In this case, the deputy ruled that there was no bad faith in refusing to pay benefits payable under the prior order, a ruling that overlooks the failure of the E/C to perform their duties to claimant during the period in question.
The Workers’ Compensation Law is designed to be self-executing, and the E/C thus may cease payment of benefits based on a good-faith denial of further obligation for benefits. That part of the “self-executing” character of the Act, however, carries with it duties of a nonadversarial nature which must be performed by the E/C, to-wit, the duty to continue to monitor the claim and to advise claimant concerning work search. The E/C’s denial of further benefits and litigation in that regard does not relieve it of that duty. The failure of the E/C to monitor the claim and advise claimant is contrary to the intent and purpose of the Act. The E/C’s obligations in this regard are essential to the fair operation of the Act.
This court has repeatedly held that a broad discretion is vested in the deputy to measure the actions of the carrier and determine the question of bad faith. We do not, therefore, reweigh the evidentiary basis for the deputy’s determination that the E/C’s controversion, litigation, and appeal of the first order was not bad faith. However, we reverse the deputy's ruling that the E/C was not guilty of bad faith by their conduct during the period of the appeal. Despite their file showing claimant’s medical condition and the prior order determining that condition to be the E/C’s responsibility, they failed to monitor the claim, supply wage-loss forms, or have any contact with claimant during the period of appeal, and then denied wage loss for that period, requiring a claim be filed. This conduct constituted bad faith.
In the proceeding below, the E/C stressed the fact that claimant had counsel, and the deputy may have been of the mistaken view that this relieved the E/C of their obligations. Claimant had several counsel at various times during the five years following his accident. However, this court has held that the fact that a claimant has counsel cannot be relied on to excuse the E/C from the basic nonadver-sarial duties to monitor the claim and inform the claimant of his rights and obligations. In Barnes v. Parker, 464 So.2d 1298, 1299 (Fla. 1st DCA 1985), this court held:
[W]e disapprove the deputy’s order to the extent that it implies that the duty of informing an injured claimant of the benefits available to him under the workers’ compensation law, or the E/C’s duty actively to pursue the obligation “to place needed benefits in the hands of the injured worker” is somehow lessened or diminished by the fact that an injured claimant is represented by an attorney, [footnotes omitted].
The 1979 Workers’ Compensation Act — in its day-to-day operation is intended to be — beyond all else — quintessentially an employer-carrier monitored system rather than a claimant-attorney monitored system.
Accord Morris v. Metal Industries, 491 So.2d 312 (Fla. 1st DCA 1986). See also Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981), (error of claimant’s attorney as to wage-loss forms was relied on by E/C in delaying payment of benefits.)
Accordingly, we reverse the order under review and remand with directions that the deputy award fees under Section 440.-34(3)(b), Florida Statutes.
WTGGINTON, J., concurs.
BARFIELD, J., dissents with written opinion.

. The record shows that the (3)(c) ground was asserted below. However, case authority disallows it as a basis for fees where the E/C initially accepts the claim and pays benefits, but subsequently denies compensability. Wilhoit International v. Tidwell, 497 So.2d 958 (Fla. 1st DCA 1986). But see Champlain Towers v. Dudley, 481 So.2d 532 (Fla. 1st DCA 1986); Occidental Chemical Co. v. Neely, 490 So.2d 59 (Fla. 1st DCA 1985); Farm Stores, Inc. v. Harvey, 474 So.2d 4 (Fla. 1st DCA 1985), where E/C denies compensability as to a part of claim and accepts other parts, and attorney fees are allowed. Also compare Singletary v. Mangham Construction Co., 471 So.2d 635 (Fla. 1st DCA 1985), where E/C controverted based on subsequent accident breaking the chain of causation to the compen-sable accident, and fees were allowed.

. Claimant suffered a prior compensable back injury in July of 1978. By order dated June 5, 1980, it was determined that he reached maximum medical improvement on November 5, 1979, with no evidence of any permanent impairment, and was entitled to no further medicals. In February of 1981, claimant returned to work at jobs requiring long hours and heavy lifting. Claimant was asymptomatic until he injured his back on August 11, 1982, resulting in the cause before us.