BOOTH, Judge.
This cause is before us on appeal from a final order of the judge of compensation claims (JCC). Appellant/claimant contends that the JCC erred in denying benefits from January 1988, the date appellant retired, through June 1988, the date appellant filed a claim for benefits. Finding merit in this argument, we reverse.
Appellant was a 54-year-old utility operator employed with the Duval County School Board, when, on September 19, 1980, he fell down a flight of steps during the course of his employment and sustained injuries to his head, right side, and lower back. Following treatment, appellant returned to work. On June 4, 1981, appellant reinjured his lower back in a lifting incident. The E/C combined the injuries for administrative purposes and designated June 4, 1981 the date of accident.
After the second accident, appellant came under the care of Dr. Paulo Monteiro, a neurosurgeon, who performed a myelo-gram and diagnosed appellant as having a herniated disc with left-side radiculopathy at the L5-S1 level. In July 1984, Dr. Mon-teiro performed a lumbar laminectomy, but the operation did not significantly improve appellant’s condition. Dr. Monteiro performed a second laminectomy at the same level in August 1985. According to Dr. Monteiro, appellant reached maximum medical improvement (MMI) on November 18, 1985, with a ten-percent permanent partial impairment.
*631 In August 1986, appellant came under the care of Dr. William Noran, a neurologist, complaining of lightning-type pain which periodically occurred without warning. Dr. Noran found that this pain was the result of irritation of the L5-S1 nerve root. Dr. Noran believed that appellant reached MMI in March 1987 with a permanent partial impairment in the range of five percent or more. Dr. Noran restricted appellant from lifting over 10 to 25 pounds, ruled out climbing, and allowed only minimal driving. Dr. Noran advised the E/C of these restrictions.
Appellant finally came under the care of Dr. Robert Pohl, an orthopedic surgeon, in April 1987. Dr. Pohl was uncertain when appellant had reached MMI, but believed that this had taken place years earlier when appellant was under the care of Dr. Monteiro. In writing of June 1988, Dr. Pohl opined that appellant had reached MMI with a 20-percent permanent partial impairment rating. Dr. Pohl permanently restricted appellant to lifting no more than 10 to 25 pounds and limited bending and driving.
Throughout the entire course of appellant’s treatment, appellant continued to work on and off for the Duval County School Board through January 1988, and appellant received benefits for the times when he was not working. In January 1988, appellant reinjured himself when, on the job, he attempted to move some posts. Dr. Pohl, then appellant’s treating physician, took appellant off work but released him to return to light duty on January 19, 1988. Instead of returning to work, however, appellant retired. Appellant did not, at that time, advise the E/C of his claim for benefits, nor did the E/C advise appellant of his entitlement to benefits.
Appellant filed his claim for benefits in June 1988, seeking permanent total disability benefits from January 1988 forward, penalties, interest, costs, and attorney fees. The E/C controverted all claims, arguing in part that appellant had voluntarily retired. In December 1989, the JCC entered his order awarding appellant permanent total disability benefits, costs, interest, and attorney fees from June 27, 1988 forward. In so doing, the JCC accepted Dr. Pohl’s opinion that appellant most likely reached MMI prior to June 1988, but found that MMI occurred on that date because Dr. Pohl did not note the date of MMI until requested to do so. The JCC further found that because appellant retired and did not apply for benefits until June 1988, no benefits were due prior to that date.
The issue before us is whether, in January 1988, the date of claimant’s retirement, the E/C had the obligation to inform appellant of his rights and obligations under the Workers’ Compensation Act. This court in Wood v. McTyre Trucking Company, Inc., 526 So.2d 739, 741-742 (Fla. 1st DCA 1988), explained:
Under Workers’ Compensation Law, an employer is under a continuing obligation, once it has knowledge of an employee’s injury, to place needed benefits in the hands of the injured worker. An employer must offer or furnish benefits when the employer knows, or reasonably should know from facts properly and diligently investigated, that such benefits are due. [citation omitted] This obligation cannot be met unless the employer informs the injured worker of the benefits to which he or she may be entitled.
Appellant’s voluntary retirement is not dispositive of this issue. In Alberta v. American Freight Systems, 565 So.2d 378, 379-380 (Fla. 1st DCA 1990), the claimant, then age 59, sustained a back injury in the course of his employment. The claimant completed a rehabilitation program, reached MMI, and was returned to work with certain restrictions. When the Alberta claimant requested light-duty work from his employer, he was informed that no such work was available and chose to retire on the spot. The E/C did not inform the Alberta claimant of his rights and obligations under the Workers’ Compensation Act.
In rejecting the JCC’s finding in Alberta that the appellant had voluntarily retired and subsequently performed an inadequate *632 work search, this court (565 So.2d at 379-380) stated:
We agree with the JCC that claimant’s decision to retire was voluntary; however, we cannot permit claimant’s decision to serve as a premise for denial of wage loss when he was not properly informed of his entitlements and obligations under the law. On this record, we are unable to determine that claimant would have retired even had he been informed as required; but it would be no imprudent speculation to wager that if he had been so informed, retirement would not have been so readily forthcoming. Regardless of whether claimant would or would not have retired if he had been properly informed, his uninformed election to retire should not subsequently excuse the E/C of their duty to inform claimant of his right to seek wage loss benefits.
This case differs from Alberta only in the respect that appellant decided to retire despite the existence of available employment with his current employer. The question, however, is not whether the E/C offered a position to appellant, but whether the E/C knew or should have known of appellant’s possible entitlement to benefits. We have no difficulty concluding, under the circumstances, that the E/C were required to inform appellant of his rights and obligations under the Act. Appellant sustained two compensable back injuries which required two major surgical procedures and extensive treatment which spanned an eight-year period. Each of appellant’s three major treating physicians found that appellant had reached MMI with a permanent partial impairment, and each assigned comparable restrictions. Further, appellant, during the course of his treatment, was frequently unable to work and received benefits during the periods of his incapacity. Appellant’s decision to retire followed a compensable reinjury.
Accordingly, we reverse the denial of permanent total disability benefits from January 1988 through June of that year and remand this cause for proceedings consistent herewith.
MINER, J., and WENTWORTH, Senior Judge, concur.