588 So.2d 1035 (1991)
Howard GILL, Appellant,
v.
USX CORPORATION and Alexsis, Inc., Appellee.
No. 90-1797.
District Court of Appeal of Florida, First District.
November 6, 1991.
Rehearing Denied December 13, 1991.
*1036 Bill McCabe, of Shepherd, McCabe & Cooley, Longwood, for appellant.
Charles E. Bentley and Sherri L. Hussey, of Holland & Knight, Lakeland, for appellee.
ERVIN, Judge.
Appellant Howard Gill appeals an order denying him wage-loss (WL) benefits between April 20, 1988 and January 10, 1990. Gill first asserts the judge of compensation claims (JCC) erred in denying his request for WL benefits between April 20, 1988 and November 10, 1988, during which time his primary treating physician had issued statements that claimant was to remain off work. Gill also claims the JCC erred in denying benefits between November 11, 1988 and January 10, 1990, because the employer/carrier (E/C) did not provide him with job-search or rehabilitation assistance. We reverse as to both issues and remand for further proceedings consistent with this opinion.
Gill was injured when he forcefully hyperextended his left foot on July 11, 1985, while working as a materials unloader for the employer, U.S. Agri-Chemicals, Inc., a division of USX Corporation. He has been treated primarily by orthopedist Dr. Horst Von Paleske, who diagnosed Gill's condition as post-traumatic neurodystrophy, also known as reflex sympathetic dystrophy. Dr. Von Paleske testified that claimant reached maximum medical improvement (MMI) on February 20, 1987, with an eight percent permanent partial impairment of his ankle.
In a previous appeal, Gill v. U.S. Agri-Chemicals, 561 So.2d 371, 372 (Fla. 1st DCA 1990), we affirmed the JCC's denial of WL benefits through April 19, 1988, concluding that "claimant had not shown the requisite causal connection between a physical limitation resulting from the industrial injury and any lost wages after the date of maximum medical improvement." We reversed only for recalculation of claimant's *1037 average weekly wage. We are now being asked to consider Gill's request for WL benefits for the subsequent periods not addressed in that opinion.
On May 11, 1988, Dr. Von Paleske wrote a work-restriction slip for Gill's employer, stating that claimant "will be off work until seen again in four months." He wrote another on August 11, 1988, advising that claimant "will be off work for three more months." In a report also dated August 11, 1988, Dr. Von Paleske commented that claimant was unable to "perform anything at all" because of severe pain in his left foot and ankle, and that his left foot and lower leg were "bluish reddish discolored." At the final hearing, Dr. Von Paleske testified that Gill had been capable of performing light-duty work since he reached MMI on February 20, 1987, and that he prepared the work-restriction notes quoted above only to excuse claimant from having to engage in manual labor with the employer. He could not remember, however, whether he actually told Gill that he could do only light or sedentary work, and he made no record in his office notes that he had actually so advised the claimant until November 10, 1988.
After considering the above evidence, we reverse that part of the final order denying Gill WL benefits between April 20, 1988 and November 10, 1988. There is simply nothing in the record suggesting that Dr. Von Paleske ever informed Gill that he could engage in light-duty or sedentary work during this period. See Croft v. Donna Jean Packing Co., 579 So.2d 146, 148 (Fla. 1st DCA 1991) (even if physician testifies that claimant could have worked at an earlier time, the evidence must establish that claimant was so informed or that she should have known she was released to work). Accord, Scott v. Container Corp. of Am., 559 So.2d 399, 401 (Fla. 1st DCA 1990) (argument that claimant failed to conduct adequate work search is immaterial when there was no evidence that physician told claimant to return to work). We have previously stated that "a doctor's communication concerning claimant's release to work must be clear and unequivocal." Lerman v. Broward County Bd. of County Comm'rs, 555 So.2d 419, 423 (Fla. 1st DCA 1989). In the case at bar, there is no evidence of any communication that would meet this exacting standard. Accordingly, we reverse that portion of the order denying appellant's claim for WL benefits for the period from April 20, 1988 to November 10, 1988, and direct that such benefits be awarded during the above interval.
We also decide that the JCC's determination that Gill did not conduct a good-faith job search between November 20, 1988 and January 10, 1990 is not by itself dispositive of the issue whether he is entitled to WL benefits during this period. It is undisputed that between May 1988 and February 1989, claimant contacted the same four prospective employers, and thereafter contacted one new employer every three or four months. On each job-search form, Gill indicated that these employers could not use a person with his type of injury and/or that he could not pass the required physical examination.
Although a JCC may, under appropriate circumstances, consider that by limiting his or her contacts to a small number of prospective employers, a claimant did not conduct an adequate work search, the adequacy vel non of a work search is only one of a number of criteria which should be considered by a judge in determining a claimant's entitlement to WL benefits. Other relevant factors include the claimant's age, his or her industrial history, the extent of the physical impairment together with any physical limitations, and his or her educational background. Grace v. Collier Co. School Bd., 552 So.2d 961, 964 (Fla. 1st DCA 1989). In addition to the these factors, the judge in the instant case should have specifically considered both the claimant's receipt of Social Security disability benefits during the period in question and the E/C's failure to provide job search assistance or rehabilitation benefits. In regard to his eligibility for Social Security disability benefits the Social Security Act requires in part that the individual be unable "to engage in any substantial *1038 gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This definition of disability is similar to that in Florida's Worker's Compensation Act, stating that the term "`[d]isability' means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." Section 440.02(9), Fla. Stat. (1985). As we observed in Escambia County Council on Aging v. Goldsmith, 500 So.2d 626, 631 (Fla. 1st DCA 1986):
For many years permanent disability, under the act, has consistently meant the extent to which a permanent physical impairment of body functions, whether partial or total, due to injuries suffered in an industrial accident, has rendered a claimant unable to earn wages at the level earned before the accident.
In that the definitions in both acts emphasize a claimant's inability to perform at a meaningful wage-earning capacity, Gill's receipt of Social Security disability benefits should have been a factor in the JCC's evaluation of claimant's ability to return to work. There was, however, no reference to this evidence in the final order, and we can discern no reason for it to have been disregarded. Therefore, we reverse and remand the case to permit the JCC to further review the issue and then clarify his findings in this regard.
We also direct the JCC to consider on remand whether the E/C should have assisted Gill with his job search, or provided him with vocational rehabilitation. Gill testified that his injured foot was extremely painful and that he consequently found driving to be difficult. Nevertheless, most of the employers he contacted were courier services which required driving and handling packages or luggage. Gill's contacts with a limited number of employers whose work was clearly beyond his abilities should have put the E/C on notice that claimant was in need of some direction in this area. We have previously emphasized that "[t]he character and progress of the [work] search is the employer's or carrier's business as well as the worker's," and that the E/C thus bears the responsibility of monitoring a claimant's job search to ensure its effectiveness. Holiday Care Ctr. v. Scriven, 418 So.2d 322, 325-26 (Fla. 1st DCA 1982). Accord Booker v. Lane's Texaco Serv., 530 So.2d 416, 419-20 (Fla. 1st DCA 1988) (E/C has ongoing duty to advise claimant concerning work search).
Moreover, as we stated in Grace v. Collier County School Board, 552 So.2d 961 (Fla. 1st DCA 1989), if the JCC concluded that a claimant demonstrated a lack of good faith by limiting his contacts to potential employers whose work was beyond his physical capacities,
[w]e would remind him that the record reflects that claimant's former employer did not provide other employment to him, nor did it offer him any rehabilitation... . Although Chapter 440 does not require an employer to automatically provide WL benefits to a permanently impaired worker if it fails to offer the worker other employment or rehabilitation benefits, we believe that an employer who fails in this material obligation risks a judge's consideration of such factor when determining the adequacy of a good faith job search, particularly when evaluating the type of employment sought by the impaired claimant, based upon his prior work experience.
Id. at 963-64. Hence, a claimant's conduct in performing a work search cannot be evaluated in isolation. Indeed, as we observed in Flesche v. Interstate Warehouse, 411 So.2d 919, 922 n. 3 (Fla. 1st DCA 1982), a work search is only one of "a number of [evidentiary] criteria by which wage-earning capacity must be measured, and `no single factor is conclusive'" (quoting Walker v. Electronic Prods. & Eng'g Co., 248 So.2d 161, 163 (Fla. 1971)). A failure or refusal of the E/C to participate in the process of assisting claimant to find work or rehabilitating him to enable him to perform other employment commensurate with his capabilities may be regarded as an *1039 abdication of its duty which had a direct bearing on the adequacy of the claimant's work search.
That part of the order denying claimant WL benefits for the period between April 20, 1988 and November 10, 1988 is reversed, and the cause is remanded with directions that claimant be awarded such benefits during this span. The portion of the order denying WL benefits from November 11, 1988 until January 10, 1990 is reversed and the cause is remanded for further proceedings consistent with this opinion. Because of our reversal of the order as stated, we also reverse and remand for the JCC to reconsider Gill's claim for costs, interest, penalties, and attorney's fees.
REVERSED and REMANDED for proceedings consistent with this opinion.
ZEHMER and BARFIELD, JJ., concur.