609 So.2d 674 (1992)
James ROLL, Appellant,
v.
SEBASTIAN INLET, SRA (State of Florida) and Division of Risk Management, Appellees.
No. 91-2085.
District Court of Appeal of Florida, First District.
December 1, 1992.
Robert C. Gray of Alpizar & Gray, R.A., Palm Bay; Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for appellant.
*675 Derrick E. Cox of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for appellees.
ERVIN, Judge.
Claimant, James Roll, appeals an order denying his claim for permanent total disability (PTD) benefits, wage-loss (WL) benefits from April 1, 1990 to the date of the hearing (April 25, 1991), and costs, penalties, and attorney's fees. We affirm the denial of PTD benefits, reverse the denial of WL benefits, costs, penalties, and attorney's fees and remand the case for further proceedings.
Roll, 64 years old at the time of the final hearing, testified that he injured his back on January 23, 1989, while employed as a park ranger for the State of Florida. Roll returned to work one month thereafter and worked for approximately nine months, but found his employment duties too difficult. He was offered a job as toll collector, which he performed for about five more months.[1] The position primarily involved receiving visitors at the park entrance, with some maintenance of the entrance station and restrooms. Roll testified that he experienced physical pain daily doing this job, yet he did not complain to his supervisor, Ronald Johns.
Dr. Gregory Priest, a chiropractor who treated Roll for two years, diagnosed claimant's condition as moderate to severe lumbosacral strain/sprain with associated myofascitis and functional intersegmental hypomobility, and opined that claimant reached maximum medical improvement (MMI) on August 25, 1989, with a permanent impairment (PI) of 15 percent to the body as a whole. He released Roll to light-duty work with limitations including no lifting over 25 pounds, minimal bending, stooping or twisting, no standing or sitting for more than 15 or 20 minutes, no frequent standing or walking, no climbing stairs, and no auto trips of more than 15 to 30 minutes.
Dr. Duane L. Seig, an orthopedist who had treated claimant before Dr. Priest, examined Roll on October 24, 1990 for the employer/carrier (E/C), and reported that claimant's diagnosis was recurrent lumbar sprain and progressive degenerative arthritis of both hips. He concluded that claimant had a ten percent PI of the lumbar spine, of which he assigned only four percent to the accident of January 23, 1989, and that claimant was not totally disabled but could work in a relatively sedentary occupation, so long as he engaged in limited walking, climbing, squatting, kneeling, no strenuous activity involving the lower extremity, and no lifting over 35 to 40 pounds on an occasional basis. He concluded that claimant had reached MMI.
Claimant testified that his pain had "progressed" while he was working as a tollbooth operator to such an extent that he was forced to retire on March 31, 1990. When specifically asked why he retired, Roll testified that he was worried he would receive a "bad efficiency rating" and wanted to retire with full benefits before the state reduced his benefits because of his deteriorating physical condition. Ronald Johns said that claimant was in no danger of losing his job or his retirement benefits based on his physical condition. Claimant told Dr. Priest that he wished to retire because he was upset that he had been reduced from ranger to toll collector as a result of his physical condition.
The judge of compensation claims (JCC) denied the claim for both PTD benefits and WL benefits from April 1990 to the date of the hearing. The JCC concluded that the testimony showed that the job as toll collector was "extremely light duty and possibly sedentary in nature," thus within claimant's restrictions as imposed by both Dr. Seig and Dr. Priest. The JCC also determined that claimant retired because he had reached retirement age and not because of anything relating to his industrial injury. Because there was medical testimony that claimant was capable of light-duty work, and evidence that the employer had a job available for him, the JCC denied PTD benefits.
*676 To be entitled to PTD benefits, a claimant must show that he or she is unable to do light work uninterruptedly due to physical limitations, or that he or she has conducted a lengthy, exhaustive job search that has proved futile. Carter v. City of Venice, 584 So.2d 577 (Fla. 1st DCA 1991). Claimant did not establish an inability to perform light work uninterruptedly, as there was medical evidence, in the form of Dr. Seig's opinion, that claimant was capable of performing work in a sedentary occupation. In addition, the toll-collector job remained available to claimant until shortly before the final hearing. We therefore affirm on this point.
We reverse the JCC's denial of WL benefits, however, for the period of time from April 1, 1990 until May 9, 1990, the day claimant began his job search. No evidence was presented that the E/C notified claimant of his obligation to conduct a work search upon his retirement on March 31, 1990. The JCC, however, rejected claimant's contention that the employer's failure to send claimant a WL letter automatically entitled him to WL benefits, stating that claimant was aware that his employer had a job available for him and knew, through his attorney, of his responsibility to conduct a work search. We cannot agree. The E/C's responsibility to inform Roll of this obligation was not discharged by claimant's voluntary retirement, when the evidence showed that the employer was fully aware that claimant was limited to light-duty employment as a result of his 1989 industrial injury. Alberta v. American Freight Systems, 565 So.2d 378 (Fla. 1st DCA 1990) (although claimant retired after employer told him there was no light-duty work available, his decision to retire could not be considered a voluntary limitation of income because the E/C did not inform him of his right to WL benefits and his responsibility to perform a work search). Claimant is therefore entitled to WL benefits from April 1, 1990, until the day he began his work search, May 9, 1990.
The dissent expresses the view that the E/C was only obligated to inform claimant of the need for a work search if the E/C knew or reasonably should have known that his voluntary retirement was related to the industrial accident. Judge Wolf distinguishes the present case from Alberta because at the time Alberta voluntarily retired, the E/C did not offer employment within Alberta's restrictions; thus, it was reasonable and necessary for the E/C to inform Alberta of the need for a job search.
Although Alberta might be factually distinguishable, our position is supported as well by Phillips v. Duval County School Board, 577 So.2d 630 (Fla. 1st DCA 1991). In Phillips, the claimant had a permanent impairment and a variety of physical restrictions. After claimant was released for light duty and the employer had light-duty work available, the claimant retired. Similar to the instant case, the E/C did not thereafter inform claimant of his need to conduct a job search. As in Alberta, this court held that the E/C was required to inform the claimant of the need for same, stating:
This case differs from Alberta only in the respect that appellant decided to retire despite the existence of available employment with his current employer. The question, however, is not whether the E/C offered a position to appellant but whether the E/C knew or should have known of appellant's possible entitlement to benefits. We have no difficulty concluding, under the circumstances, that the E/C were required to inform appellant of his rights and obligations under the Act. Appellant sustained two compensable back injuries which required two major surgical procedures and extensive treatment... . Each of appellant's three major treating physicians found that appellant had reached MMI with a permanent partial impairment, and each assigned comparable restrictions.
Id. at 632 (emphasis added). Admittedly, the claimant's injuries in Phillips may have been more extensive than Roll's, and, in the case at hand, the claimant demonstrated his ability to perform light-duty work by holding the toll collector position for a number of months prior to voluntary retirement. Still, the E/C at bar was aware that *677 claimant had sustained a permanent impairment with substantial restrictions. Consequently, the E/C was obligated to inform claimant of the need for a work search.
In regard to the claim for WL benefits for the period of time that claimant performed a work search, we reverse the order of denial and remand the case for further findings because we are unable to find record support for the JCC's determination that claimant's job search was "grossly inadequate" due to the JCC's perception that "he was looking for work that he was not capable of performing." The JCC stated: "When the employers contacted are involved in employment situations the claimant is not able to perform because of experience or physical restrictions, the job search is impermissibly inadequate." This is not a correct statement of the law. Having received from claimant no less than 23 job-search forms showing that claimant had contacted approximately 280 prospective employers, the employer had ample opportunity to determine whether Roll had applied for positions that were beyond his physical or vocational capacities. In view of the employer's duty to monitor a job search to ensure its effectiveness, the employer should have assisted claimant if, in fact, it became apparent that he was making unrealistic contacts. Gill v. USX Corp., 588 So.2d 1035 (Fla. 1st DCA 1991). As we stated in Gill:
A failure or refusal of the E/C to participate in the process of assisting claimant to find work or rehabilitating him to enable him to perform other employment commensurate with his capabilities may be regarded as an abdication of its duty which had a direct bearing on the adequacy of the claimant's work search.
Id. at 1038-39. As in Gill, we direct the JCC on remand to reconsider the adequacy of claimant's work search in light of the employer's failure to monitor and assist the claimant during his search. Accord Grace v. Collier County Sch. Bd., 552 So.2d 961 (Fla. 1st DCA 1989) (order must be reversed if reviewing court cannot determine whether JCC considered all circumstances relating to adequacy of work search).
We are aware that the employer's vocational counselor, Richard Hall, did contact claimant's attorney approximately one month prior to the final hearing in order to assist him in his work search, but that the attorney declined such assistance. The JCC should determine whether such refusal was made in good faith. If the JCC decides it was not, his determination in that regard would, of course, have no effect on the adequacy of claimant's job search efforts undertaken before the employer's offer of vocational assistance, which must otherwise be evaluated pursuant to the Gill standards.
To conclude: That portion of the order denying the claim for PTD benefits is affirmed; that portion denying the claim for WL benefits from April 1, 1990 through May 9, 1990 is reversed, with directions that benefits for same be awarded; and that portion thereof denying the claim for WL benefits thereafter is reversed, and remanded for findings consistent with this opinion. Due to our disposition of the issue relating to the denial of WL benefits, the JCC on remand should also reconsider the issue of claimant's entitlement to attorney's fees, costs, interest, and penalties.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.
MINER, J., concurs.
WOLF, J., concurs in part and dissents in part with written opinion.
WOLF, Judge, concurring in part and dissenting in part.
I dissent from that portion of the opinion which provides that the claimant is entitled to wage loss from April 1, 1990, until May 9, 1990, and from that portion of the opinion which provides that there was no record support to find the claimant's job search to be grossly inadequate. The majority concludes that the claimant is entitled to wage loss based on the E/C's failure to advise claimant of his rights to wage loss and to provide job search and wage-loss forms prior to May 9, 1990. An employer is under an obligation to apprise a claimant of *678 the entitlement to benefits where the employer knew, or reasonably should have known, that benefits are due. Wood v. McTyre Trucking Co., Inc., 526 So.2d 739, 741-742 (Fla. 1st DCA 1988). Therefore, an employer is under an obligation to inform an employee of the entitlement to wage-loss benefits upon voluntary retirement where the employer knew, or reasonably should have known, that the retirement is related to the industrial accident. Alberta v. American Freight Systems, 565 So.2d 378 (Fla. 1st DCA 1990). In Alberta, Phillips v. Duval County School Board, 577 So.2d 630 (Fla. 1st DCA 1991), and Southern Bell Tel. Co. v. Seneca, 512 So.2d 1005 (Fla. 1st DCA 1987), the employers were required to advise the claimants of their rights to wage-loss benefits after voluntary retirement. In each of those cases, however, the employees were either not able to return to work or were not offered employment within the physical restrictions imposed by a physician. In Phillips, supra, which the majority asserts is indistinguishable from the instant case, the employee was continuously on and off work after suffering the initial injury. Immediately prior to retiring, the employee reinjured himself and was taken off work by his doctor. When he was released to light-duty work, the employee retired rather than returning to work. Under those circumstances, the employer was determined to be on notice that the employee's retirement was causally related to the industrial accident. In the instant case, the claimant worked for the employer from August 25, 1989, until retiring on March 31, 1990. The JCC found that this work was within claimant's restrictions, and claimant was able to perform the work. The JCC also found that claimant retired because he had reached retirement age, and not because of anything related to his industrial injury. There was competent substantial evidence to support each of these findings. Here, it was unclear whether the employer was ever informed that appellant was having trouble performing his job duties after he returned to work. Under these circumstances, the JCC could find that the E/C did not have reason to know that the employee was entitled to wage-loss benefits. Thus, this case is distinguishable from Alberta, Phillips, and Southern Bell.
The question propounded in Alberta, supra, of whether the E/C knew or should have known of appellant's possible entitlement to benefits is a factual one. I cannot say based on the evidence in this case that we should invade the province of the JCC and decide as a matter of law that the employer should have known of the employee's entitlement to benefits. I would, therefore, remand for the JCC to make further factual findings concerning the E/C's responsibility to advise claimant of the obligation to perform a work search during this period.
I also disagree with the majority concerning whether factual support existed for the JCC's findings concerning the job search. The adequacy of a claimant's work search is a factual issue within the deputy commissioner's fact-finding authority. Trujillo v. Southern Wine and Spirits, 525 So.2d 481 (Fla. 1st DCA 1988). The deputy's determination should be upheld if there is any evidence in the record which supports the finding. Trujillo, supra at 483. In determining the adequacy of a work search or whether claimant has voluntarily limited his income, the JCC should look at all existing circumstances. Paramount Poultry v. Mims, 472 So.2d 1281 (Fla. 1st DCA 1985). In Gill v. USX Corp., 588 So.2d 1035 (Fla. 1st DCA 1991), this court held that one of the circumstances to be considered in evaluating a work search was employer and carrier's failure to monitor and provide job-search assistance, and held that failure to consider such circumstances would result in a remand for the JCC to consider this factor.
In reviewing the JCC's determination in this case that the job search was inadequate, the majority concludes (1) "We are unable to find support for the JCC's determination that the job search was `grossly inadequate,'" and (2) the case must be remanded in light of the JCC's failure to consider the factors emphasized in Gill. I disagree with the first assertion. The record *679 does contain competent substantial evidence to determine that claimant did not pursue a good-faith job search.[1] It cannot be determined from the order, however, whether the JCC considered all appropriate factors and circumstances. Thus, a remand based on this court's decision in Gill is justified, Florida Sheet Metal v. Stiffler, 593 So.2d 610 (Fla. 1st DCA 1992). I would note, however, that the failure of the employer to assist in the work search is only one of many factors to be considered by the JCC in determining, on remand, whether the claimant failed to conduct an adequate job search.
NOTES
[1] Although claimant was informed that his pay would be reduced from that as a park ranger, he actually received $8.00 more per month than he had in his former position.
[1] Factors which would support this determination include (1) the JCC's finding that claimant voluntarily left a job within his restrictions, (2) that a number of job contacts made by claimant were outside his restrictions, (3) that the vast majority of contacts were made with employers who were not hiring, and (4) the claimant's refusal to participate when the E/C finally did offer job-search assistance.