1999 OK CIV APP 25

**Max L. VENTRIS, Petitioner,**

v.

**EXPRESS PERSONNEL, National Union Fire Insurance and the Workers' Compensation Court, Respondents.**

**No. 91,613**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 8, 1998.

---

Robert Highsaw, Midwest City, Oklahoma, John R. Colbert, Ardmore, Oklahoma, for Petitioner.

Michael Mancillas, Oklahoma City, Oklahoma, for Respondents.

## OPINION

### STUBBLEFIELD, P.J.

¶ 1 Claimant seeks review of an order of a three-judge panel, affirming the trial court's denial of continued temporary total disability compensation and further medical care. After a review of the record on appeal and applicable law, we reverse.

¶ 2 Claimant Max L. Ventris filed his Form 3 on February 11, 1998, alleging that he had sustained an injury to his left leg, left ankle and left groin when he fell while in the employ of Express Personnel. Employer acknowledged the accident and an injury sustained by Claimant but maintained the injury was only to the left leg. Employer also claimed it had paid temporary total disability (TTD) from August 18, 1997, to January 1, 1998, at an incorrect rate and sought credit for the overpayment.

¶ 3. After hearing, the trial court entered its order of April 22, 1998, finding that Claimant had sustained a work-related injury to his left leg and left foot but had not sustained an injury to the groin. The trial court found that Claimant had been paid TTD at the rate of $289 per week from August 8, 1997, to January 1, 1998, and denied any additional TTD or medical treatment. By a split vote, a three-judge panel affirmed the decision of the trial court. Claimant now seeks review in this court.

¶ 4 On appeal, an order of a three-judge panel must be sustained if there is any competent evidence to support it. *Odyssey/Americare of Oklahoma v. Worden,* 1997 OK 136, ¶ 6, 948 P.2d 309, 311; *Parks v. Norman Mun. Hosp.,* 1984 OK 53, ¶ 2, 684 P.2d 548, 549. Claimant proposes that the order denying TTD and medical treatment should be vacated because, indeed, it is not supported by any competent evidence. Claimant emphasizes the language of the dissenting judge of the three-judge panel, who stated: "The medical evidence unequivocally establishes that the claimant was temporarily totally disabled on FEBRUARY 5, 1998 which will continue until the claimant reaches maximum medical improvement."

¶ 5 Employer cites *Bodine v. L.A. King Corp.,* 1994 OK 22, 869 P.2d 320, for the proposition that TTD can be terminated even though the claimant had not been released from restrictions with regard to the amount of weight he could lift and could not return to the work he had done previously. However, the facts in *Bodine* simply are not analogous to those herein.

¶ 6 First, in *Bodine,* there was conflicting evidence relative to whether the claimant needed further physical therapy. Second, the employer's expert had expressed the opinion that the patient was over the maximum post-injury and post-surgery healing time and that the residual symptoms were of a permanent nature. *Id.* at ¶ 2, 869 P.2d at 321. The medical expert also stated that he did not find any medical necessity for vocational training or any further medical management. That expert stated that his impressions were that the claimant could return to his normal occupational activities as a

production worker, but he did recommend that the claimant initially not lift more than twenty to thirty pounds. *Id.* However, importantly, the medical expert rated the claimant for permanent partial disability as did the claimant's medical expert. *Id.*

¶ 7 Herein, the record reflects that immediately following the work-related accident, Claimant's injury was considered to be relatively minor, consisting of a "severe bruise of the left distal thigh, medial knee, and proximal medial leg." He was treated conservatively but, after the pain and swelling increased, he was given antibiotics and put in a knee splint. Then "spontaneous drainage" commenced, and Claimant was admitted to the hospital with a "necrotic area in the mid portion of the wound which is draining a fowl [*sic*] substance, looks like an infected hematoma ... trying to get out of control." Claimant subsequently had three surgical procedures at both above and below the knee.

¶ 8 At trial, Claimant submitted a report of his attending physician who stated that Claimant continued to have pain, limited mobility, tendinitis in the knee with atrophy of the calf and weakness of the knee, along with neuritis in one of the nerves in the medial side of the knee that radiates at the side of the groin. That medical expert concluded that Claimant continued to be temporarily totally disabled for the indefinite future.

¶ 9 Employer submitted two attending physician form reports from Claimant's surgeon. In the first report, the surgeon noted that Claimant could return to work, with restrictions, on November 14, 1997. The surgeon *estimated* Claimant could return to full duty on January 1, 1998. However, the January 1 date, which was specifically stated to be an estimate, was unquestionably later changed by the physician. By the second report of February 5, 1998, the surgeon, after further evaluation, stated that Claimant could return to light duty work on February 5, 1998, *with an estimated date for return to full duty of August 1, 1998.*

¶ 10 Claimant also testified at trial. He stated that after his TTD had been terminated on January 1, 1998, he had tried to work for a heating and air business for "a couple of hours" but was unable to do the work. He further testified that, after his treating surgeon had released him to light duty work on February 5, 1998, he had returned to Employer with the intent of going back to work with restrictions. He testified that he was told that there was no light duty work available and that he should return when he could perform full duty work. *Employer did not refute this testimony.*

█ ¶ 11 Employer acknowledges that Claimant could not work at the time of trial but inexplicably states "[t]he mere fact that [C]laimant is unable to work does not deem him temporarily totally disabled." However, if a claimant "is totally incapacitated for work due to illness resulting from injury," *Bama Pie, Inc. v. Roberts,* 1977 OK 100, ¶ 12, 565 P.2d 31, 34, he is entitled to TTD. The court in *Bodine* does indicate that a claimant's ability to do light work, though not able to return to his former job, sustains a finding that the TTD period has ended. However, implied in *Bodine* is that the "light duty work" would be that of the workers' compensation employer.

¶ 12 The court in *Hinton v. Labor Source,* 1998 OK CIV APP 2, ¶ 1, 953 P.2d 358, 358, addressed the issue of whether an employer has the obligation to offer light duty to a claimant if it is available, or whether the burden is on a claimant to inform his employer he is available for light duty. Therein, the claimant's physician had reported to the employer that the claimant could return to light duty work but had not relayed that information to the claimant. The *Hinton* court stated: "Under the facts of this case, we hold an employer must inform an employee of the availability of light duty work in order to defend against responsibility for paying temporary total disability." *Id.*[1] The *Hinton* court stated that the burden is not shifted to the claimant to prove a negative—that no

1. *See also State ex rel. Schirtzinger v. Mihm,* 81 Ohio St.3d 459, 692 N.E.2d 193, 194 (1998)(emphasizing four criteria for denying temporary total disability compensation: (1) actual return to work; (2) medical ability to return to former position of employment; (3) refusal of suitable, alternative employment; and, (4) permanency/maximum medical improvement).

light duty work was available. *Id.* at ¶ 10, 953 P.2d at 359.

¶ 13 Herein, the *only evidence*, as recounted above, was that Claimant had not reached maximum medical improvement, needed additional treatment and was still disabled at the time of trial.[2] He had been released for light duty, but it is not disputed that he presented himself to Employer for such work and was told that no light duty work was available and to return when released for full duty. Under such circumstances, the trial court and three-judge panel erred by terminating TTD and denying continued medical treatment.

¶ 14 Accordingly, we find that the three-judge panel committed legal error. The order of the three-judge panel is reversed and the cause remanded to the trial court with instructions to order TTD and medical treatment consistent with the medical evidence noted herein.

¶ 15 REVERSED AND REMANDED WITH INSTRUCTIONS.

REIF, J., and RAPP, J., concur.

---

2. As noted, the surgeon's first estimate of full recovery was amended from January 1, 1998, to August 1, 1998. Thus, this doctor's first estimate does not support the lower court's use of the January 1, 1998, date.