1999 OK CIV APP 83

**John C. FIDLER, Petitioner,**

v.

**WALTERS–MORGAN CONSTRUCTION COMPANY, Royal Insurance Company, and the Workers' Compensation Court, Respondents.**

**No. 92,208.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 29, 1999.

---

W.E. Sparks, W.E. Sparks and Associates, Tulsa, Oklahoma, For Petitioner.

Bradley D. Avey, Oklahoma City, Oklahoma, For Respondents.

*OPINION*

GOODMAN, P.J.

¶1 This is a review of an order of the Workers' Compensation Court denying the claimant's request for additional temporary total disability benefits because he declined his employer's offer of light-duty work. Based upon our review of the record and applicable law, we vacate the order, and remand for further proceedings.

I

¶2 It is undisputed that claimant John C. Fidler injured his back October 3, 1997, during the course of his employment as a concrete finisher for employer Walters–Morgan Construction Company. He reported the injury to his employer, and received medical treatment and temporary total disability benefits from October 10 to October 19, 1997.

¶3 The claimant's treating physician authorized the claimant to return to light-duty work October 20, 1997, with the restriction of no heavy lifting over 50 pounds. The employer offered the claimant light-duty work and discontinued temporary total disability benefits.

¶4 The claimant filed a Form 3 January 15, 1998, and a Form 9 requesting additional temporary total disability benefits from October 20, 1997, and authorization for a medical examination with a specialist. The trial court held a hearing April 13, 1998, and denied the request for additional benefits between October 20 and the date of the hearing, finding the "claimant declined the light duty offered" by the employer. The court reserved the issue of the claimant's entitlement to future temporary total disability benefits, and appointed an independent medical examiner (IME) to assess the claimant's physical condition and determine whether the claimant was "temporarily totally disabled."

¶5 In a letter dated April 16, 1998, the employer notified the claimant that "light duty assignment is available at our Owasso, OK Wastewater Treatment Facility," and listed 16 types of work available.[1] The claimant was told where, when, and to whom he should report.

¶6 In a letter dated April 23, 1998, the employer notified the claimant's attorney that the "light duty employment assignment at the Owasso WTP will be extended [but]

---

1. The letter stated:
   The light duty work available consists of the following:
   1) Patching form tie breakbacks,
   2) Rubbing concrete walls,
   3) Tending finishers with concrete flatwork,
   4) Prefabrication of formwork components,
   5) Sort and distribute form supplies and materials [,]
   6) Tend form work operations,
   7) Spot concrete delivery trucks and tend chute and bucket,
   8) General jobsite cleanup and trailer cleanup,
   9) Distribute tools and power cords at start of day and pick up at end of shift,
   10) Fine grade site with skidsteer loader and minimal hand grading,
   11) Assist in treatment plant equipment start up and testing,
   12) Touch up painting and detailing out of treatment plant equipment,
   13) Service and maintenance on construction equipment,
   14) Installation of aluminum handrail,
   15) Final cleanup of buildings and equipment for owner acceptance,
   16) Other light duty work that can be performed within the restrictions of the light duty assignment.

[w]e will consider our offer rejected if [the claimant] does not report for work on Monday, April 27, 1998 or contact [the project superintendent] prior to start of shift on April 27, 1998."

¶ 7 The court-appointed IME filed his initial report June 5, 1998. He said he had "ordered an MRI scan to be performed of the lumbar spine...." He noted that the claimant "performs heavy construction work and has not been able to work and has been off since October 3, 1997." He stated the MRI scan "is to be done 06–08–98, and I will re-check the patient 06–12–98 in follow-up."

¶ 8 In a report dated June 12, 1998, the IME stated the claimant was temporarily totally disabled and in need of further medical treatment. However, the report did not "include a determination of whether or not the employee is capable of returning to light duty work, and what restrictions, if any, shall be followed by the employer in order to permit the employee to return to work" as required by 85 O.S. Supp.1998, § 17(D)(6). Both parties requested the trial court to have the IME address light duty work and restriction.

¶ 9 In a letter dated July 8, 1998, the IME stated the claimant "was to be seen again in our office on July 7, 1998 and *did not present for his appointment.*" He noted that he "will be most happy to address the Court's and [the parties] concerns but we will need to see the patient in the office to determine his response to the conservative treatment."

2. The letter stated:
The light duty assignments available at Bartlesville are as follows:
1) Cleanup of building, office trailer, tool trailer and work areas,
2) Service and maintenance on construction equipment,
3) Assist in plant equipment start up and testing,
4) Caulking of horizontal and vertical control joints'
5) Distribute tools and power cords at start of work and end of shift,
6) Receiving deliveries,
7) Touch up painting and detailing out of pumping equipment,
8) Cleaning and stacking of surplus construction materials,
9) Light grading and hand work to prepare for seeding, and

¶ 10 In a "Follow–Up Examination" dated July 28, 1998, the IME noted

[The claimant] states that this employer had offered him light duty but it was tasks such as pouring concrete, packing tools to the job site, and wheeling concrete. He states that he would not accept that job description. The patient does have a sheet with the specifics of his previously provided light duty description. ... *This patient does continue TTD* while we are awaiting the effects of his second but possibly last epidural steroid at L4–5. I have reviewed stretching exercises to be continued. *The patient is to refrain from lifting, bending, stooping and twisting, but he should walk daily.* The first date that we can obtain the epidural steroid is 08–04–98. The patient will be re-checked three weeks after that on 08–26–98. (Emphasis added.)

¶ 11 On August 18, 1998, the claimant filed a Form 9 request for temporary total disability benefits from October 20, 1997, and continuing. In a Follow–Up Evaluation dated August 26, 1998, the IME discussed the claimant's complaints and physical condition, but did not comment on his ability to return to light duty work with restrictions.

¶ 12 In a letter dated August 21, 1998, the employer informed the claimant's attorney of two projects "with several assignments available for [the claimant] that can be performed with restrictions." The employer stated, however, that the "information we received did not contain any criteria or parameters for the medical restrictions.[2] *If these assign-*

10) Other light duty work that can be performed within the medical restrictions and [the claimant's] capabilities.
The light duty assignments available in Sapulpa are as follows:
1) Set up office and tool trailers,
2) Assist in plant layout and surveying,
3) Receive material deliveries,
4) Service and maintenance on construction equipment,
5) Tending carpenters for concrete form assembly,
6) Operate rubber tired loader for excavation & pipe laying operations,
7) Sort, stack, and distribute form materials to carpenters,
8) Patch form tie breakbacks,
9) Distribute tools and power cords at start of work and end of shift, and

ments are not in conformance with the medical restrictions please advise and we will modify these assignments & /or develop work assignments that conform to the medical restrictions." (Emphasis added.) The employer concluded: "We would appreciate a written reply within five (5) working days if [the claimant] will be accepting the available light duty assignments." The claimant did not respond.

¶ 13 The trial court held a hearing on the matter October 8, 1998. The claimant announced he was seeking temporary total disability benefits from June 12, 1998, the date the IME informed the trial court the claimant was temporarily and totally disabled and in need of further medical treatment.

¶ 14 In an order filed October 29, 1998, the trial court denied the claimant's request. Specifically, the court found that the employer had "offered work to claimant within any restrictions imposed by the treating physician. The light duty available was within claimant's restrictions." The claimant seeks our review.

## II

¶ 15 The claimant contends the trial court's order is not supported by competent evidence. The argument is that the court-appointed IME has not released the claimant to return to light duty work, and "an employer's *offer* to provide light duty work does not establish the claimant's *ability* to do that work." We agree.

¶ 16 Title 85 O.S. Supp.1998, § 14(A)(2), states in part: "*If the employee is capable of returning to modified light duty work,* the attending physician *shall promptly notify* the employee and the employer ... *in writing* and *shall also specify what restrictions, if any, must be followed by the employer in order to return the employee to work.*" (Emphasis added.) After an employer receives such notice, it may file a Form 11 Motion to Terminate Temporary Compensation based upon "the written medical report or a Form 5 [Physician's Release

and Restrictions] of a physician who indicates the employee has been released from the physician's professional care and is able to return to work...." Workers' Compensation Court Rule 15, 85 O.S. Supp.1998, ch. 4, app. Thereafter, the employer has the burden of proving that light-duty work was available to the injured employee, and that the employer notified the claimant of that availability. *Hinton v. Labor Source,* 1998 OK CIV APP 2, 953 P.2d 358.

¶ 17 The employer in this matter has diligently kept the claimant and his attorney informed regarding the availability of light-duty work and the employer's willingness to accommodate whatever physical limitations the IME may impose. However, an employer's opportunity to seek termination of temporary benefits by offering light-duty work arises only after it receives notice that a claimant is capable of returning to work with restrictions. By the same token, a claimant's obligation to accept such light-duty assignment or risk termination of temporary benefits arises only after his physician has so notified the claimant and his employer. The trial court's Order for Medical Examination specifically stated: "If the claimant is *not* temporarily totally disabled or if the claimant has reached maximum medical improvement, the physician is requested to complete the enclosed court's Form 5 (physician's release and restriction.)"

¶ 18 The undeniable fact is that *the record before us does not contain written notice from the IME to the claimant and his employer that the claimant is capable of returning to light-duty work with specific physical restrictions.* Indeed, in the last Follow–Up Examination summary contained in the record, dated September 17, 1998, the IME stated: "The patient would now like to consider surgery since *he has not been able to return to even ordinary activities of daily living without continuing symptoms ....*" (Emphasis added.) The employer's August 21, 1998, letter acknowledges as much when it states: "The information we received did

10) Other light duty work that can be performed within the medical restrictions and [the

claimant's] capabilities.

not contain any criteria or parameters for the medical restrictions."

### III

¶ 19 We hold that, in the absence of written evidence that the IME specifically has released the claimant to return to light-duty work with established restrictions, the trial court erred as a matter of law. The order is vacated, and the matter is remanded for further proceedings.

¶ 20 ORDER VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.

RAPP, J., and TAYLOR, J., concur.