2002 OK 75

**B.E. & K. CONSTRUCTION and St. Paul Fire & Marine, Petitioners,**

v.

**Dennis ABBOTT and the Workers' Compensation Court, Respondents.**

No. 97,039.

Supreme Court of Oklahoma.

Oct. 1, 2002.

John B. Vera, Oklahoma City, OK, for Petitioner.

Brandon Burton, Oklahoma City, OK, for Respondent.

KAUGER, J:

¶1 A single, first-impression, question of law [1] is presented: [2] whether an employee, volunteering for inclusion in an employer-planned reduction in force, is entitled to post-termination temporary total disability benefits [3] for an on-the-job injury. Under

1. On consideration of factual determinations, the three-judge panel's review of the trial judge's findings is governed by a clear weight of the evidence test. Title 85 O.S.2001 § 3.6(A); *Sneed v. McDonnell Douglas*, 1999 OK 84, ¶8, 991 P.2d 1001. In reviewing the three-judge panel's determinations, this Court applies the any competent evidence standard. *Owings v. Pool Well Service*, 1992 OK 159, ¶7, 843 P.2d 380; *Lacy v. Schlumberger Well Service*, 1992 OK 54, ¶7, 839 P.2d 157. However, on questions of law we exercise *de novo* review. *Ibarra v. Hitch Farms*, 2002 OK 41, ¶4, 48 P.3d 802; *Upton v. State ex rel. Dept. of Corrections*, 2000 OK 46, ¶4, 9 P.3d 84. Under this standard, the Court has plenary, independent and non-deferential authority to address legal issues. *American Airlines v. Hervey*, 2001 OK 74, ¶11, 33 P.3d 47; *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081. The entitlement to temporary total disability compensation is generally a question of fact left to the Workers' Compensation Court. *Gray v. Natkin Contracting*, 2001 OK 73, ¶11, 44 P.3d 547. Here, however, the question is not whether the medical testimony or the factual circumstances will support the award. Rather, the material facts are undisputed and a question of law is presented. *Morillo v. Director of the Division of Employment Security*, 394 Mass. 765, 477 N.E.2d 412 (1985); *Rice v. Arizona Dept. of Econ. Sec.*, 183 Ariz. 199, 901 P.2d 1242 (Ct.App. 1995). But see, *Healion v. Great West Life Assurance Co.*, 830 F.Supp. 1372, 1374 (D.Colo.1993) [Voluntariness a question of fact where material issues of fact exist.]; *Fisher v. Levine*, 36 N.Y.2d 146, 365 N.Y.S.2d 828, 325 N.E.2d 151, 153 (1975) [Voluntariness may present a mixed question of law and fact.].

We note that some provisions of the workers' compensation statutes have been amended since Abbott's injury in March of 2001. Nevertheless, references are to the most current codification absent a finding that an earlier version controls.

2. The employer asserted on appeal that the wrong date was noted in the three-judge panel's order for the beginning of temporary total disability benefits. Both parties now agree that the award of benefits should begin three days following the date the employee left his employment under the employer's reduction in force plan. Therefore, we need not address this issue and the three-judge panel's order is overruled only to the extent that the wrong date was originally utilized

for the calculation of benefits. Title 85 O.S.2001 § 13 provides:

> "No compensation shall be allowed for the first three (3) calendar days of disability except the benefits as provided for in Section 14 of this title."

Rule 14, Rules of the Workers' Compensation Court, 85 O.S.2001, Ch. 4, App. provides in pertinent part:

> "A. Upon the receipt of notice that an employee has been injured, the employer has an obligation under the Workers' Compensation Act to provide that employee with reasonable and necessary medical treatment, and to commence temporary compensation in the event that the employee is disabled and unable to return to work for more than three (3) calendar days...."

The employee's brief in chief, filed on January 14, 2002, provides in pertinent part at pp. 3–4:

> "... Although Respondent failed to cite the proper authority for this issue, Claimant concedes the Court En Banc's order is void on its face in as much as it orders the start date for temporary total disability is April 26, 2001. In light of 85 O.S. § 13, temporary total disability benefits properly begin on April 29, 2001. Respondent stated the proper date as April 30, 2001. However, April 26, 2001, was the day Claimant was laid off, and therefore, the first day of disability rendering April 29, 2001, the fourth date of disability. 85 O.S. § 13."

Admissions in the brief may be regarded as a supplement to the appellate record. *Keating v. Edmondson*, 2001 OK 110, ¶9, 37 P.3d 882; *World Publishing Co. v. White*, 2001 OK 48, ¶19, 32 P.3d 835; *Oklahoma Urban Renewal Auth. v. Medical Technology & Research Auth. of Oklahoma*, 2000 OK 23, ¶14, 4 P.3d 677. Although the employee requested that he be awarded appeal-related costs and fees in his brief in chief on appeal, the plea was not renewed in the petition for certiorari.

3. The purpose of temporary disability benefits is to replace wages lost during an employee's healing period. *American Airlines v. Hervey*, see note 1 at ¶12, supra; *Farm Fresh, Inc. v. Bucek*, 1995 OK 44, ¶8, 895 P.2d 719. Temporary total disability awarded pursuant to 85 O.S.2001 § 22(2) involves the time frame following an accidental injury when an employee is totally incapacitated for work. *Upton v. State ex rel. Dept. of Corrections*, 2000 OK 46, ¶1, 9 P.3d 84; *Bodine v. L.A. King Corp.*, 1994 OK 22, ¶9, 869 P.2d 320;

the facts presented, we determine that benefits are payable.

## UNDISPUTED FACTS

¶ 2 On March 21, 2001, the petitioner, Dennis Abbott (Abbott/employee), while working for the respondent, B.E. & K. Construction (construction company/employer), was injured on the job. When the accident occurred, the employee was approximately thirty feet above ground on an extension ladder. A thirty-pound bearing cap fell, striking Abbott in the head and knocking him to the ground. The employee lost consciousness, cut his brow and suffered injuries to his neck and back.

¶ 3 Abbott resumed his job the day after the injury on light-duty restrictions. He continued to work from March 22nd to April 26th. By that time, the construction project was beginning to phase out and Abbott learned that reductions in force were imminent. Because the work he had been assigned was interrupted and he had nothing to do, Abbot asked his supervisor to be included in the employer-planned reduction in force. His request was granted and Abbott was terminated on April 26th. When the employee returned to his doctor on May 3rd, the physician advised Abbott that he should not be doing even light duty jobs and took him completely off work.[4]

¶ 4 A hearing on the employee's claim for temporary total disability[5] was held on July 5, 2001. Although Abbott's supervisor testi-

fied that it was the employee's decision to leave the job, he also stated that being included in the reduction in force was not tantamount to an employee quitting.[6]

¶ 5 The trial judge, Honorable Susan Witt Conyers, ordered Abbott's temporary total disability terminated effective April 26, 2001. The three judge panel modified the order, directing that temporary benefits be paid from April 26th through August 7, 2001—the date the employee was released from treatment by his physician. Finding that the employee left his job without coercion from his employer, the Court of Civil Appeals reversed the panel's order and remanded for an alteration in the beginning date for benefits. We granted certiorari on July 2, 2002.

¶ 6 **EVEN THOUGH AN INJURED EMPLOYEE VOLUNTEERS FOR INCLUSION IN AN EMPLOYER PLANNED REDUCTION IN FORCE, IF THE EMPLOYER MAKES THE FINAL DETERMINATION TO DISCHARGE THE EMPLOYEE, WORKERS' COMPENSATION BENEFITS ARE PAYABLE.**

■ ¶ 7 Although Abbott asked to be included in the employer's reduction in force, he argues that temporary total disability is payable. He asserts that, ultimately, the employer controlled the decision to conduct a layoff and to include him in the reduction in force. The employer concedes that had it

---

*Bama Pie, Inc. v. Roberts,* 1977 OK 100, ¶ 12, 565 P.2d 31.

4. Transcript of proceedings, July 5, 2001, the employee's testimony providing in pertinent part:
   " ... Q Now, you go back to Dr. Schneider on May the 3rd?
   A Yes.
   Q Does he take you off work at that point or leave you on light duty?
   A No, he took me off completely.
   Q He's had you off work ever since; is that right?
   A Yes, sir. ... "

5. Although an employee capable of doing light work is not considered to be totally disabled, capacity is considered total where no work within the employee's capability is available. *Gray v. Natkin Contracting,* see note 1 at ¶ 17, supra.

6. Transcript of proceedings, July 5, 2001, Melvin E. Lee testifying, providing in pertinent part at pp. 25–26:
   " ... Q Andy by his asking to be included in this reduction in force, is that like quitting in your business?
   A Well, I mean, it's not like quitting, but it's, you know, we usually—what we do, we have volunteers, you know, if people wants to work, if people volunteer, then we let the people, you know, who really want stay or need to work to stay there.
   Q Let me rephrase that. Whose choice was it for him to stop working there, BE & K's or his?
   A Absolutely his. ...
   Q This reduction of force, when people leave your employment under reduction of force, it's not as though they quit; isn't that correct?

either fired or laid off the injured employee, Abbott would be entitled to temporary total disability benefits.[7] Nevertheless, it contends that the employee would not have been terminated if he had not volunteered for the program. Essentially, the employer insists that Abbott controlled his own destiny—he would not have been terminated absent his request. Therefore, volunteering for the reduction in force constituted a refusal to accept an offered light-duty assignment and was tantamount to a resignation. We disagree.

¶8 The employer finds support in three non-precedential opinions released for publication by the Court of Civil Appeals:[8] *Tubbs v. Oklahoma Tax Comm'n,* 2001 OK CIV APP 97, 28 P.3d 624; *Akers v. Seaboard Farms,* 1998 OK CIV APP 169, 972 P.2d 885; and *Hinton v. Labor Source,* 1998 OK CIV APP 2, 953 P.2d 358.[9] All three cases are factually distinguishable.

¶9 *Tubbs* provides that an employee, released for light duty, is entitled to temporary total disability benefits if the employer offers no light-duty assignment. The precise issue presented in *Tubbs* is the effect that an

employee's resignation will have on the right to receive benefits. The Court of Civil Appeals determined that employer's are not required to offer light-duty work to former employees not incapacitated and that the employee's resignation severed the employment relationship and the responsibility to pay benefits. Unlike the employee in *Tubbs,* Abbott did not resign his position nor did he refuse a light-duty assignment.

¶10 The employee in *Akers* was discharged for cause—failing a drug test. Essentially, the Court of Civil Appeals determined that the employee's own actions were an effective refusal to continue accepting the light-duty work provided by the employer. Although Abbott offered to be included in his employer's reduction in force, he did not leave his employment because of a violation of job related policies. Further, until ordered by his physician to discontinue work, he would have continued his light-duty assignments.[10]

¶11 *Hinton* involved a single issue: whether an employer must offer light-duty work to an employee to avoid the payment of temporary total disability benefits.[11] The

---

A No. ..."

7. The employer's reply brief, filed on February 7, 2002, provides in pertinent part at p. 3:
   "... If the Respondent here had laid the Claimant off while he was on light duty, clearly the Claimant would be entitled to temporary total disability benefits. ..."
   Title 85 O.S.2001 § 11, see note 28, infra; 85 O.S.2001 § 14; 85 O.S.2001 § 22; *Pierce v. Franklin Elec. Co.,* 1987 OK 34, ¶12, 737 P.2d 921 [Termination does not relieve an employer of the responsibility for the employee's medical care and disability payments. Superseded by statute on other grounds.]. See also, *Ventris v. Express Personnel,* 1999 OK CIV APP 25, ¶13, 978 P.2d 374 [Employee presenting himself to employer for light duty work but told that no such work is available may collect temporary total disability benefits.]. Abbott was not receiving temporary total disability when he was discharged pursuant to the employer's reduction in force. Such a termination, if based solely on absence from work, is prohibited. Title 85 O.S. 2001 § 5(B), see note 30, infra; *Upton v. State ex rel. Dept. of Corrections,* see note 1 at ¶12, supra.

8. Opinions released for publication by order of the Court of Civil Appeals, are persuasive only, and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1.

9. The employer also finds support in extant jurisprudence. Specifically, *Freeman v. Continental Baking Co.,* 212 Ga.App. 855, 443 S.E.2d 520–21 (1994) [Employee denied benefits after having been fired for failing a drug test]; *Goodyear Tire Rubber Co. v. Watson,* 219 Va. 830, 252 S.E.2d 310, 312 (1979) [Employee denied benefits after having been discharged for poor work performance and frequent absences.]. These cases differ on the facts from the situation presented here—in both *Freeman* and *Watson,* this note, supra, the employee was essentially discharged for cause.

10. Transcript of proceedings, July 5, 2001, Dennis Ray Abbott testifying in pertinent part at pp. 9–10:
    "... Q Would you have, if the ROF request hadn't been granted, would you have quit?
    A No, sir.
    Q You would have kept doing the light duty?
    A Yes. ..."

11. Involving the same issue and the burden of proof relating to the offer of light duty opportunities, see, *Cummings v. Armin Plastics, Own Risk,* 2000 OK CIV APP 61, ¶16, 5 P.3d 1099; *Fidler v. Walters Morgan Constr. Co.,* 1999 OK CIV APP 83, ¶16, 987 P.2d 457; *Moss v. Affiliated Food Stores, Inc.,* 1999 OK CIV APP 51, ¶6, 982 P.2d 1089; *Ventris v. Express Personnel,* note 7, supra.

Court of Civil Appeals held that the burden rested on the employer to show that it had offered light-duty work to defend against the payment of benefits. Under *Hinton*, absent an offer of light duty, the employer is responsible for paying temporary total disability. Here, there is no question that light duty was offered. Unlike *Hinton*, this cause turns on whether the employer may avoid payment of temporary benefits after having chosen to include Abbott in its reduction-in-force program.

¶ 12 Several views exist in extant jurisprudence on the issue of the payment of workers' compensation benefits to employees who subsequently leave their jobs. Some courts find that where an employee's separation from employment is voluntary, workers' compensation benefits are not payable.[12] Others recognize that even a voluntary separation from employment will not preclude the award of benefits.[13] Another acknowledges that employer's may not avoid their responsibilities under workers' compensation laws by allowing employees to voluntarily retire without advising them of their rights to compensation benefits.[14] Benefits have been denied where the employee resigned rather than face the possibility of disciplinary action,[15] to avoid unfriendly environmental factors,[16] or to accept a higher paying job which the employee subsequently was unable to perform.[17]

¶ 13 Authority is split over whether an employee volunteering to be included in an employer-planned reduction in force, as Abbott did here, should be considered as having effectively resigned from employment. The majority of these cases provide that although an employee may opt for inclusion in an employer-mandated layoff, the layoff itself is still instituted at the employer's prerogative. The fact that the employees may decide among themselves who will bear the burden of termination does not make the employee's departure voluntary.[18] These courts reason

12. *Baliles v. District of Columbia Dept. of Employment Servs.*, 728 A.2d 661, 665 (D.C.App. 1999) [Employee cleared for job duties who voluntarily limits income through retirement is not entitled to temporary total disability benefits following retirement date.]; *Amicola v. New York Telephone Co.*, 294 A.D.2d 621, 741 N.Y.S.2d 329–30 (Ct.App.2002) [Participation in early retirement incentive program rendered employee ineligible for workers' compensation benefits.].

13. *Scalise Indus. v. Workers' Compensation Appeal Bd.*, 797 A.2d 399, 402 (Pa.2002) [Retirement decision based on limitations related to work-related injury will not preclude the award of workers' compensation benefits.]; *State ex rel. Wagers v. Industrial Comm'n of Ohio*, 93 Ohio St.3d 218, 754 N.E.2d 777, 780 (2001) [Temporary total disability compensation benefits payable if the employee does not abandon completely the job market.]; *State ex rel. Baker v. Industrial Comm'n, of Ohio*, 89 Ohio St.3d 376, 732 N.E.2d 355, 361 (2000) [To the same effect as *Wagers*, this note, supra.].

14. *Phillips v. Duval County School Bd.*, 577 So.2d 630–31 (Fla.1991)

15. *State ex rel. Liposchak v. Industrial Comm'n of Ohio*, 73 Ohio St.3d 194, 652 N.E.2d 753–54 (1995), *reconsideration denied*, 74 Ohio St.3d 1410, 655 N.E.2d 188 (1995).

16. *Capezzuti v. Glens Falls Hosp.*, 282 A.D.2d 808, 722 N.Y.S.2d 620–21 (2001).

17. *Powers v. District of Columbia Dept. of Employment Servs.*, 566 A.2d 1068–69 (D.C.App. 1989).

18. *Harants v. United States Postal Serv.*, 130 F.3d 1466, 1468 (Fed.Cir.1997); *Perlman v. United States*, 203 Ct.Cl. 397, 490 F.2d 928, 931 (1974) [Where no real chance of reassignment exists, retirement involuntary.]; *Missouri Div. of Employment Sec. v. Labor & Indust. Relations Comm'n of Missouri*, 651 S.W.2d 145, 150 (Mo. 1983); *Morillo v. Director of Employment Sec.*, see note 1 at 413, supra; *Wailuku Sugar Co. v. Agsalud*, 65 Haw. 146, 648 P.2d 1107, 1111 (1982); *Nielsen v. Employment Security Dept. of Washington*, 93 Wash.App. 21, 966 P.2d 399, 407 (1998); *Martell v. State of Florida Unemployment Appeals Comm'n*, 654 So.2d 1203–04 (Fla.Ct. App.1995), *review denied*, 662 So.2d 934 (Fla. 1995); *Rice v. Arizona Dept. of Economic Sec.*, see note 1 at 1244; *South Central Bell v. Louisiana Dept. of Labor*, 527 So.2d 1113, 1116, *writ denied*, 532 So.2d 153 (La.1988); *AT & T Information Sys., Inc. v. Department of Econ. Sec.*, 154 Ariz. 236, 741 P.2d 703, 705 (Ct.App.1987); *Stanford v. Unemployment Ins. Appeals Bd.*, 147 Cal.App.3d 98, 195 Cal.Rptr. 1, 3–4 (1983); *Barash v. Levine*, 43 A.D.2d 778, 350 N.Y.S.2d 790 (1973); *Westinghouse Elec. Corp. v. Unemployment Compensation Bd.*, 182 Pa.Super. 491, 128 A.2d 184, 186 (1956). Other situations involving an employee's determination to retire or leave the workforce have also been found not to terminate benefits. *Scalise Indus. v. Workers' Compensation Appeal Bd.*, see note 13, supra; *State ex rel. Wagers v. Industrial Comm'n of Ohio*, see

that when the first and last steps of the termination process are taken by the employer, i.e. planning the reduction and then selecting certain employees for inclusion, even one who has agreed to participate in the process has not voluntarily terminated employment.[19]

¶ 14 The majority recognizes that the ultimate choice and responsibility for unemployment lies only with the employer's decision to reduce available jobs.[20] It is immaterial which of several employees are terminated or that an employee may participate in the selection process [21] or whether, absent an offer of inclusion in the lay off, the employee's position would have been at risk.[22] Employers are not compelled to accept an employee's offer [23] and their benefits are the same—

a reduction in the work force.[24] The employees have no voice in promulgating the lay-off policy and exercise only limited options.[25]

¶ 15 We consider the analysis proffered by the majority of jurisdictions addressing whether an employee's offer to be included in an employer-announced lay off should be considered a voluntary termination persuasive and logical. The majority's conclusions are based in the realities of the workplace— an employee electing to volunteer for an employer-planned reduction in force does not exercise the ultimate power or final decision as to which employees will be targeted for termination. It is the employer who decides to eliminate a job and to lay off a given individual, based on the employer's needs. It is irrelevant that the employee may have

---

note 13, supra; *State ex rel. Baker v. Industrial Comm'n of Ohio*, see note 13, supra. See also, *Oklahoma Employment Security Comm'n v. Board of Review*, 1996 OK CIV APP 19, ¶ 2, 914 P.2d 1083 [Benefits were denied to a federal employee accepting early retirement. Nevertheless, the appellate court indicated that had the cause involved a situation where an actual reduction in force were involved, the result would have been in favor of the employee.]. See generally, Annot., *"Eligibility for Unemployment Compensation of Employee who left Employment Based on Belief that Involuntary Discharge was Imminent,"* 79 A.L.R.4th 528 (1990). But see, *Torain v. United States Postal Serv.*, 83 F.3d 1420, 1422 (Fed.Cir.1996) [Decision to retire before announcement of reduction in force found voluntary.]; *Christie v. United States*, 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975) [Decision to retire rather than to fight dismissal for cause found voluntary.]; *Baliles v. District of Columbia Dept. of Employment Servs.*, see note 12, supra; *Matter of Anderalli*, 247 A.D.2d 652, 668 N.Y.S.2d 778, 780 (1998); *Ortega v. Employment Security Dept.*, 90 Wash.App. 617, 953 P.2d 827, 831 (1998), *review granted*, 136 Wash.2d 1028, 972 P.2d 464 (1998); *McArthur v. Borman's, Inc.*, 200 Mich. App. 686, 505 N.W.2d 32, 36 (1993); *Robinson v. Department of Employment Security*, 827 P.2d 250, 252 (Utah App.1992); *Sievers v. Commonwealth*, 124 Pa.Cmwlth. 52, 555 A.2d 260, 263 (1987), *appeal granted*, 518 Pa. 645, 542 A.2d 1373 (1988), *aff'd*, 520 Pa. 83, 551 A.2d 1057 (1989); *Shea v. Hanna Mining Co.*, 397 N.W.2d 362, 368 (Minn.App.1986); *Fisher v. Levine*, see note 1 at 834.
The Court notes that several of the cited cases involve unemployment benefits. These cases are likewise persuasive in the workers' compensation arena. *CJS Co. v. Workers' Compensation Appeals Bd.*, 74 Cal.App.4th 294, 88 Cal.Rptr.2d 109 (1999). In Oklahoma, just as workers' compensation statutes are liberally construed in favor

of the employee, see ¶ 17 and accompanying footnotes, infra, so are unemployment compensation statutes intended to protect employees from the evils associated with unemployment. *Realty Mortgage & Sales Co. v. Oklahoma Employment Sec. Comm'n*, 1945 OK 268, ¶ 10, 169 P.2d 761.

**19.** *Morillo v. Director of Employment Sec.*, see note · 1 at 413, supra; *Nielsen v. Employment Security Dept. of Washington*, see note 18, supra; *South Central Bell v. Louisiana Dept. of Labor*, see note 18, supra; *AT & T Information Sys., Inc. v. Arizona Dept. of Econ. Sec.*, see note 18, supra.

**20.** *Missouri Div. of Employment Sec. v. Labor & Indus. Relations Comm'n*, see note 18, supra; *Morillo v. Director of the Division of Employment Security*, see note 1 at 413, supra; *Nielsen v. Employment Security Dept. of Washington*, see note 18, supra; *Westinghouse Elec. Corp. v. Unemployment Compensation Bd.*, see note 18, supra.

**21.** *Missouri Div. of Employment Sec. v. Labor & Indust. Relations Comm'n of Missouri*, see note 18, supra; *Nielsen v. Employment Security Dept. of Washington*, see note 18, supra.

**22.** *Rice v. Arizona Dept. of Economic Sec.*, see note 1 at 1244.

**23.** *South Central Bell v. Louisiana Dept. of Labor*, see note 18, supra.

**24.** *Rice v. Arizona Dept. of Economic Sec.*, see note 1 at 1244.

**25.** *Nielsen v. Employment Security Dept. of Washington*, see note 18, supra; *Stanford v. California Unemployment Ins. Appeals Bd.*, see note 18, supra. See also, *Westinghouse Elec. Corp. v. Unemployment Compensation Bd.*, note 18, supra.

made the employer's determination easier by first volunteering to be laid off.

¶ 16 We hold that where, as here, an injured employee volunteers for an employer-instigated reduction in force, and the employer makes the ultimate decision to terminate, rights to workers' compensation benefits are not affected. In reaching this result, we align ourselves with the majority of jurisdictions addressing the nature of an employee's actions when deciding to volunteer for an employer-instigated reduction in force.

¶ 17 Were we not convinced by the majority position, we would still be compelled to hold in favor of the employee. Unquestionably, as the employer recognizes,[26] had the construction company fired or laid off Abbott—without his volunteering for inclusion in the reduction in force, he would be entitled to temporary total disability benefits.[27] Absent very limited circumstances, none of which apply here, the Workers' Compensation Act, 85 O.S.2001 § 11,[28] mandates that employers subject to the act "shall pay"[29] compensation to an employee for an accidental on-the-job injury. The statute does not provide that the requirement to disburse compensation terminates upon the employ-

---

**26.** See, ¶ 7 and accompanying footnotes, supra.

**27.** *Pierce v. Franklin Elec. Co.,* see note 7, supra [Termination does not relieve an employer of the responsibility for the employee's medical care and disability payments.]; *Conlin Co. v. Guckian,* 1933 OK 276, ¶——, 21 P.2d 740 [Employee laid off entitled to consideration of degree to which disability related to employment or pre-existing physical condition.]; *Magnolia Petroleum Co. v. Bunnell,* 1932 OK 400, ¶ 8, 11 P.2d 460 [Employee laid off or discharged entitled to workers' compensation benefits in accordance with workers' diminution in earning capacity.]; *Forrest E. Gilmore Co. v. Shipley,* 1932 OK 370, ¶ 12, 11 P.2d 474 [To the same effect as *Bunnell,* this note, supra]; *Magnolia Petroleum Co. v. Spoon,* 1932 OK 125, ¶ 10, 8 P.2d 61 [Employee struck in head while in course of employment entitled to workers' compensation benefits after having been laid off by employer.]; *Atlantic Oil Producing Co. v. Malone,* 1931 OK 458, ¶ 11, 3 P.2d 874 [Employee laid off because of inability to do work entitled to workers' compensation benefits.]; *Centrilift v. Evans,* 1995 OK CIV APP 159, ¶ 22, 915 P.2d 391 [An employee filing workers' compensation claim after being laid off by employer was entitled to temporary total disability benefits.]. There are situations when an employee who has quit his position may continue to be entitled to workers' compensation benefits. *Leonhardt Enterprises v. Houseman,* 1977 OK 51, ¶ 5, 562 P.2d 515 [Employee continues to be covered by workers' compensation statutes for reasonable time after quitting position, i.e. period sufficient to gather belongings and exit employer's premises.]. Further, even a termination for cause following a work-related injury may not result in the termination of benefits. *Guico v. Excel Corp.,* 260 Neb. 712, 619 N.W.2d 470, 478 (2000) [Employee discharged for cause day following work-related injury entitled to workers' compensation benefits.].

**28.** Title 85 O.S.2001 § 11 provides in pertinent part:
"A. Every employer subject to the provisions of the Workers' Compensation Act shall pay, or provide as required by the Workers' Compensation Act, compensation according to the schedules of the Workers' Compensation Act for the disability or death of an employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of employment, without regard to fault as a cause of such injury, and in the event of disability only, except as follows:
1. An injury occasioned by the willful intention of the injured employee to bring about injury to himself or another;
2. An injury resulting directly from the willful failure of the injured employee to use a guard or protection against accident furnished for use pursuant to any statute or by order of the Commissioner of Labor;
3. An injury resulting directly from the use or abuse of alcohol, illegal drugs or chemicals, or the abuse of prescription drugs; provided, this paragraph shall only apply when the use or abuse rendered the employee incapable of acting in the manner in which an ordinarily prudent and cautious person, in full possession of his or her faculties, and using reasonable care, would have acted at the time of the injury. For the purposes of this paragraph, post-accident alcohol or drug testing results shall be admissible as evidence; and
4. Except for innocent victims, an injury caused by a prank, horseplay, or similar willful or intentional behavior.
B. No person, firm, partnership, corporation, or other entity may discharge any employee during a period of temporary total disability solely on the basis of absence from work...."

**29.** The use of "shall" generally signifies a legislative command. *Davis v. GHS Health Maintenance,* 2001 OK 3, ¶ 9, 22 P.3d 1204; *United States through Farmers Home Admin. v. Hobbs,* 1996 OK 77, ¶ 7, 921 P.2d 338; *State ex rel. Macy v. Freeman,* 1991 OK 59, ¶ 8, 814 P.2d 147. Nevertheless, the term can be permissive. *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, ¶ 9, 619 P.2d 869.

ee's dismissal and we may not interpret it to do so. Otherwise, we would create an extra-statutory forfeiture of benefits in the face of the Legislature's clear prohibition in 85 O.S. 2001 § 5 [30] against an employee's discharge for filing a compensation claim. Our statutory structure mandating that employers not be allowed to avoid compensating their employees for their on-the-job injuries through termination, combined with the remedial nature of the statutes and Oklahoma's well-settled jurisprudence that the statutes should be construed in favor of the workers they are intended to benefit, [31] necessitates that we recognize Abbott's right of recovery.

## CONCLUSION

¶ 18 Today's pronouncement addresses a first impression question of law on undisputed facts. We determine that, under the facts presented—where Abbott suffered an on-the-job injury while in the course of his employment, volunteered for the employer's instigated reduction in force and was terminated following the construction company's decision to include him in the downsizing program—the employee is entitled to temporary total disability benefits. Our holding: 1) aligns us with the majority of jurisdictions recognizing that even where an employee may volunteer

for inclusion in a reduction-in-force program, it is the employer who has the ultimate control over the jobs which will be eliminated and the employees who will be terminated; [32] and 2) avoids the extra-statutory forfeiture of benefits guaranteed to employees pursuant to 85 O.S.2001 § 5. [33] The cause is remanded for proceedings consistent with the views expressed herein.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THREE–JUDGE PANEL SUSTAINED IN PART, OVERRULED IN PART; TRIAL COURT OVERRULED; CAUSE REMANDED.**

HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, SUMMERS, BOUDREAU, WINCHESTER, JJ. concur.

OPALA, J. concurs in result.

OPALA, J., concurring in result.

The provisions of the Workers' Compensation Act do not authorize the trial tribunal to deny an employee's claim for temporary total disability based on the employer's assertion that the injured person's employment status came to be terminated before the end of his

---

30. Title 85 O.S.2001 § 5 provides in pertinent part:

"A. No person, firm, partnership, corporation, or other entity may discharge, or, except for non-payment of premium, terminate any group health insurance of any employee because the employee has in good faith:
1. Filed a claim;
2. Retained a lawyer for representation regarding a claim;
3. Instituted or caused to be instituted any proceeding under the provisions of this title; or
4. Testified or is about to testify in any proceeding under the provisions of this title which relates to the employee's past or present employment...."

31. *Phillips v. Duke Manufacturing, Inc.*, 1999 OK 25, ¶ 6, 980 P.2d 137; *Garrison v. Bechtel Corp.*, 1995 OK 2, ¶ 17, 889 P.2d 273; *Buckner v. General Motors Corp.*, 1988 OK 73, ¶ 18, 760 P.2d 803; *Special Indem. Fund v. Treadwell*, 1984 OK 91, ¶ 11, 693 P.2d 608; Note, "Workers' Compensation–Retaliatory Dischharge–The Legislative Response to *Dockery v. Lampart Table Co.*," 58 N.C.L.Rev. 629, 640 (1980).

32. *Harants v. United States Postal Serv.*, see note 18, supra; *Perlman v. United States*, see note 18, supra; *Missouri Div. of Employment Sec. v. Labor & Indust. Relations Comm'n of Missouri*, see note 18, supra; *Morillo v. Director of Employment Sec.*, see note 1 at 413, supra; *Wailuku Sugar Co. v. Agsalud*, see note 18, supra; *Nielsen v. Employment Security Dept. of Washington*, see note 18, supra; *Martell v. State of Florida Unemployment Appeals Comm'n*, see note 18, supra; *Rice v. Arizona Dept. of Economic Sec.*, see note 1 at 1244; *South Central Bell v. Louisiana Dept. of Labor*, see note 18, supra; *AT & T Information Sys., Inc. v. Department of Econ. Sec.*, see note 18, supra; *Stanford v. Unemployment Ins. Appeals Bd.*, see note 18, supra; *Barash v. Levine*, see note 18, supra; *Westinghouse Elec. Corp. v. Unemployment Compensation Bd.*, see note 18, supra. See also, *Scalise Indus. v. Workers' Compensation Appeal Bd.*, note 13, supra; *State ex rel. Wagers v. Industrial Comm'n of Ohio*, note 13, supra; *State ex rel. Baker v. Industrial Comm'n of Ohio*, note 13, supra; *Oklahoma Employment Security Comm'n v. Board of Review*, note 18, supra.

33. Title 85 O.S.2001 § 5, see note 30, supra.

healing period. Neither common-law norms nor those of equity are available **to supplement, abridge or alter** the statute's *exclusive* provisions that define the *outer limit of compensation liability.*[1] I hence concur in today's conclusion that the trial tribunal's denial of claimant's quest for temporary total disability from on-the-job harm *impermissibly shortchanged* the amount of statutory benefits that were his due.

1. *See Brooks v. A.A. Davis & Co. et al,* 1926 OK 965, 124 Okl. 140, 254 P. 66, 67, whose syllabus states: "The Workmen's Compensation Law [now the Workers' Compensation Act] ... is in derogation of the common law; and common-law rules cannot be invoked either to enforce or **defeat** a claim for compensation asserted under the act" (emphasis supplied). Were the court persuaded today to sustain the trial tribunal's order that denies the claimant's quest for *the full amount* of his healing-period disability, its pronouncement would rightly deserve condemnation for placing the court's *imprimatur* **on an extra-statutory forfeiture of a worker's right to legislatively authorized compensation benefits.**