2003 OK CIV APP 67

**DIVERSIFIED RUBBER, and Mega Life & Health Insurance, Petitioners,**

v.

**Clayborne HARVEY and The Workers' Compensation Court, Respondents.**

**No. 98,374.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 20, 2003.

Victor R. Seagle, Kelly M. Greenough, Perrine, McGivern, Redemann, Reid, Berry & Taylor, P.L.L.C., Tulsa, OK, for Petitioners.

W.C. Doty, The Bell Law Firm, Norman, OK, for Respondent Clayborne Harvey.

Opinion by KENNETH L. BUETTNER, Judge:

¶ 1 Petitioner Diversified Rubber (Employer) seeks review of an order of a three-judge panel of the Workers' Compensation Court which affirmed in part and modified in part the order of the trial court. Employer challenges the panel's order regarding the length of time vocation rehabilitation payments must be made, and also the finding that Claimant Clayborne Harvey made a prima facie case that he is permanently totally disabled. Because we find the panel erred in awarding vocational rehabilitation payments for the period before Harvey was actively participating in a vocational training program, we vacate the order and remand for further proceedings.

¶ 2 Harvey filed his Form 3 January 18, 2000, in which he claimed his left hand was crushed by a rubber cutter while working for Employer October 12, 1999. Employer filed its Form 10 May 15, 2000, in which it admitted that Harvey sustained an accidental injury arising out of and in the course of employment. In its Form 10, Employer noted that it had paid temporary total disability (TTD) benefits to Harvey from October 15, 1999 until February 3, 2000. Pursuant to Harvey's request in his Form 9 filed May 11, 2001, the court granted Harvey an additional 52 weeks of TTD benefits June 15, 2001.

¶ 3 Harvey filed another Form 9 July 17, 2001, in which he sought trial on the issues of permanent disability, continued medical treatment and prescriptions, further surgeries, and a "functional capacity evaluation." Employer filed another Form 10 August 27, 2001, in which it claimed an overpayment of TTD from May 29, 2001 through June 11, 2001, and denied that Harvey was permanently totally disabled. Employer filed its objection to the vocational evaluation of Kathy Bottroff December 20, 2001.

¶ 4 The trial court issued its order April 26, 2002. The court found that Harvey had sustained an injury to his left hand arising out of and in the course of employment. The court found Harvey was TTD from October 16, 1999 until February 3, 2000, and also from August 1, 2000 until May 29, 2001. The court noted that Employer had paid TTD benefits to Harvey from October 16, 1999 until February 3, 2000, and from August 1, 2000 through June 11, 2001. The court therefore awarded Employer credit for overpayment of TTD for the period from May 29, 2001 through June 11, 2001. In paragraph 4, the trial court found that Harvey was "not permanently and totally disabled solely as a result of this accident." In paragraph 5, the court found that Harvey had sustained 40% permanent partial disability to the left hand and awarded 84.4 weeks of compensation. The trial court denied Harvey's request for continuing medical maintenance. In paragraph 7, the trial court reserved the issue of vocational rehabilitation for 60 days. In paragraph 8, the trial court denied Harvey's request for benefits under 85 O.S.Supp.1997 § 16(D).

¶ 5 Harvey appealed the trial court's order to a three-judge panel May 6, 2002. Harvey argued that the evidence supported a finding that he was PTD and was entitled to continuing medical maintenance. Harvey later amended his appeal to the panel to also challenge the denial of § 16(D) benefits and to argue that the finding of 40% disability was "grossly inadequate."

¶ 6 The panel issued its order September 23, 2002, in which it vacated paragraphs 4, 5, 7, and 8. The panel issued the following provisions in lieu of the vacated paragraphs:

–4–

THAT, but for the ability to be retrained, the claimant has established a prima facie case to support an award of permanent total disability.

–5–

THAT as a result of said injury, claimant has sustained 40 percent permanent partial disability to the LEFT HAND.

–7–

THAT within 90 days of the filing date of this order, the claimant is directed to advise C.A.R.E. of his desire to receive job

placement assistance or to initiate a program of vocational retraining. C.A.R.E. is directed to coordinate the efforts to return the claimant to gainful employment. The respondent is directed to provide C.A.R.E. with a photocopy of this order.

–8–

THAT the claimant shall be entitled to Section 16D benefits (weekly compensation equivalent to temporary total disability) from MARCH 5, 2002 (date of trial) and continuing.

The panel also ordered that paragraphs 9, 10, and 12 be vacated and that the remaining paragraph, 11, be renumbered to be consecutive with the rest of the order.[1]

¶ 7 We review factual determinations made by a three-judge panel using the any competent evidence standard; but for questions of law, our review of the panel's decision is *de novo*. *B.E. & K. Const. v. Abbott*, 2002 OK 75, 59 P.3d 38, n. 1. In seeking review of the panel's order here, Employer asserts first that the panel erred in ordering it to pay benefits under § 16(D) beginning on the date of trial. Employer asserts that the plain language of § 16(D) states that vocational rehabilitation payments may only be paid "during the period when an employee is actively participating in a retraining or job placement program for purposes of evaluating permanent total disability status, . . ." 85 O.S.Supp.1997 § 16(D). Employer argues that Harvey was not actively participating in

a retraining or job placement program on the date of trial. We agree. Subsection 16(D) is unambiguous:

D. *During the period when an employee is actively participating* in a retraining or job placement program for purposes of evaluating permanent total disability status, the employee shall be entitled to receive benefits at the same rate as the employee's temporary total disability benefits computed pursuant to Section 22 of this title. No attorney fees shall be awarded or deducted from such benefits received during this period. All tuition related to vocational rehabilitation services shall be paid by the employer or the employer's insurer on a periodic basis directly to the facility providing the vocational rehabilitation services or training to the employee.

(Emphasis added).

¶ 8 Nothing in the record indicates that Harvey had begun any type of vocational training or job placement program at the time of trial or at the time of the panel's order.[2] Indeed, the panel's order gives Harvey 90 days in which to report for vocational retraining. The language "during the period when an employee is actively participating" in a retraining program is unambiguous. Taken in the context of the whole statute, this language does not include the initial evaluation process to determine if a vocational rehabilitation program is needed or practicable. The purpose of vocational rehabilita-

---

1. Paragraph 9 provided the method of payment of the benefits to Harvey, paragraph 10 ordered Employer to pay costs and a Special Occupational Health and Safety Fund Tax. Paragraph 12 provided for an award of attorney fees. Paragraph 11 ordered a $75 filing fee to be paid pursuant to 85 O.S.1991 § 93.

2. The evidence included two reports from evaluations of Harvey for vocational rehabilitation. Harvey's Exhibit 2 was a report from PROS and Associates. The report indicated that PROS conducted a vocational evaluation October 23, 2001. The report noted that Harvey had been limited to lifting no more than 5 or 10 pounds with his left hand, while his previous job required him to lift around 100 pounds. PROS found that Harvey lacked the intellectual and academic skills to benefit from any formalized retraining program. The report indicated that Harvey hoped to buy a farm and live off the land. The report concluded that Harvey is unable to be retrained for any job

which would allow him to earn a living without the use of his hands, and that accordingly, Harvey is permanently and totally disabled from performing any work.

¶ 9 Employer's Exhibit 2 was an Initial Vocational Evaluation Report from C.A.R.E. The C.A.R.E. evaluation consisted of several vocational aptitude tests, which revealed that Harvey reads at the first grade level and has third grade math skills. The C.A.R.E. report listed four types of jobs that Harvey could do without additional training: optical goods polisher, fast food worker, welcome host-greeter, and escort vehicle driver. The C.A.R.E. report noted that Harvey expressed an interest in computer training and listed three job training programs available: an academic skills enhancement class, introduction to computers and computer repair classes, and electronic repair technician classes.

tion is to restore the employee to gainful employment. The employee can only contribute to this purpose by undertaking the services or training offered by the employer or ordered by the court. To order § 16(D) benefits for a time period when a claimant is not actively involved in a retraining program would not only contravene the plain language of the statute, but would also allow the employee to collect the benefits and later elect not to participate in a retraining program— particularly in this case where the reports indicate few retraining options for Harvey.

¶ 9 The panel erred as a matter of law in ordering § 16(D) benefits to be paid beginning on the date of trial and continuing. On remand, the panel is directed to enter an order providing that § 16(D) benefits are to be paid, if at all, only during the time Harvey is actively participating in a vocational rehabilitation or job training program.[3]

■ ¶ 10 Employer's remaining argument involves the panel's finding that Harvey has made a prima facie case to support an award of permanent and total disability. Employer's argument is first, that the panel erred in not making a finding as to the extent of disability due to a prior hand injury suffered by Harvey. Employer urges that Harvey was a previously impaired person so that any PTD benefits must be sought in a proceeding against the Multiple Injury Trust Fund. Harvey did not have an adjudicated prior work injury. At trial, Harvey agreed that he had injured his left hand when he was a younger man. Harvey also testified, though, that he had fully recovered from that injury and could use his left hand as well as his right at the time of the injury involved in this case. The Workers' Compensation Act defines a "physically impaired person," for purposes of proceeding against the Multiple Injury Trust Fund, as "a person who as a result of accident, ... or any other cause, has suffered ... the loss of the use or partial loss of the use of a member such as is obvious and apparent from observation or examination by

an ordinary layman, . . . ." 85 O.S.2001 § 171. No evidence in the record shows that Harvey's earlier injury to his left hand caused any loss of use. Harvey testified that use of his left hand was essential to the job he had been doing for most of his adult life until the injury at issue in this case. The injury at issue in this case caused Harvey to lose part of his left hand and to lose most of the use of that hand.

¶ 11 In his report, Dr. McClure noted that Harvey explained he had fractured two of his left fingers in 1972 and had undergone surgery at that time. Harvey further explained to Dr. McClure that he had no further problems with his left hand until the instant injury. Dr. McClure opined that apportionment is not an issue. Dr. Watts' report noted Harvey's 1972 left hand injury and stated "(Harvey) had some residual deformity of the middle finger." But the damage to Harvey's left middle finger from the instant injury was such that Dr. Watts could only opine that some of the damage *may* have been from the old injury.

■ ¶ 12 A review of the panel's order shows that the panel agreed with the trial court that the 1999 left hand injury caused 40% permanent partial disability. The panel held, however, that but for the ability to be retrained, Harvey had made a prima facie case for permanent total disability. This is supported by competent evidence in the record that without successful vocational rehabilitation, Harvey would be unable to earn a living because he could no longer perform manual labor and did not have the intellectual ability to earn a living otherwise. Whether an injured employee is permanently totally disabled is not determined solely on the percentage of disability, but rather is "largely dependent on the individual's ability to perform continuously some substantially gainful occupation, notwithstanding his disability." *City of Norman v. Steves,* 1998 OK CIV APP 81, 962 P.2d 655, 657, citing

---

**3.** We disagree with Employer's suggestion that Harvey is not entitled to § 16(D) benefits because he had briefly returned to work. Harvey returned to work for Employer but was unable to perform the assigned job. It was undisputed that Harvey could no longer perform the type of manual labor he had done all his adult life. Vocational rehabilitation was therefore appropriate pursuant to the express language of 85 O.S.Supp.1997 § 16(A), and the order allowing vocational rehabilitation was therefore supported by competent evidence.

*Apache Fixtures v. Erby,* 1995 OK CIV APP 53, 900 P.2d 462. Similarly, the Workers' Compensation Act defines "permanent total disability" as "incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee may become physically suited and reasonably fitted by education, training or experience, including vocational rehabilitation;. . . ." 85 O.S.2001 § 3(17).

¶ 13 Because Harvey has yet to complete the vocational rehabilitation offered by the court, he cannot be adjudicated permanently totally disabled. The plain language of § 16 indicates that vocational rehabilitation or job training under that section is for the purpose of evaluating permanent total disability. We find that the panel followed that mandate by qualifying its finding with the language "but for the ability to be retrained." We find the panel did not adjudicate Harvey as permanently totally disabled, but rather held that such determination could be made based on the outcome of the vocational rehabilitation or job training program offered by C.A.R.E. In *City of Norman, supra,* this court approved a "temporary and conditional" determination of PTD status pending vocational rehabilitation. 962 P.2d at 657. We find no error of law in paragraph 4 of the panel's order and we also find that paragraph is supported by competent evidence.

¶ 14 We VACATE the panel's order and REMAND for entry of a new paragraph 8 in accordance with this opinion.

ADAMS, P.J., concurs; JOPLIN, C.J., dissents.